**SILVER CHRYSLER PLYMOUTH, INC., Plaintiff-Appellee,**

v.

**CHRYSLER MOTORS CORPORATION and Chrysler Realty Corporation, Defendants-Appellants.**

No. 1, Docket 74–1104.

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1974.

Decided May 23, 1975.

752

Robert Ehrenbard, New York City (Kelley, Drye, Warren, Clark, Carr & Ellis, Ezra I. Bialik, Michael S. Insel, New York City, on the brief), for defendants-appellants.

Dale A. Schreiber, New York City (Hammond & Schreiber, P. C., Alexander Hammond, Raymond A. Bragar, New York City, on the brief), for plaintiff-appellee.

Before MOORE, ADAMS * and MULLIGAN, Circuit Judges.

MOORE, Circuit Judge:

An action is pending before Judge Weinstein in the Eastern District of New York entitled *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corporation* and *Chrysler Realty Corporation.*[1] It awaits trial. The controversy alleged therein essentially is whether Silver Chrysler's dealership agreement with Chrysler was for five years (the term specified in a written lease executed between the parties in 1968) as asserted by Chrysler or for twenty-five years as alleged by Silver Chrysler on the basis of a 1967 agreement. This seemingly simple breach of contract complaint also contains a cause of action under the so-called Dealers' Day in Court Act, 15 U.S.C. § 1221 *et seq.* The claim alleges threats amounting to coercion or intimidation which forced Silver Chrysler under threat of eviction to sign a new agreement at a higher rental in May 1973 (the expiration date of the five-year term). This brief recital of the nature of the action is required only as a background to the issue on this appeal, which is disqualification of counsel.

Chrysler for many years has been represented by the law firm of Kelley Drye Warren Clark Carr & Ellis (Kelley Drye) and its predecessors, which also represents Chrysler in this action. Although many other law firms represent Chrysler on various matters throughout the country, only Kelley Drye is listed on Chrysler's annual reports as "Counsel." Silver Chrysler is represented by the firm of Hammond & Schreiber, P. C. Dale Schreiber of that firm had been employed as an associate by Kelley Drye, and while there worked on certain Chrysler matters. Because of this fact Kelley Drye by motion sought to disqualify both Schreiber and his firm from representing Silver Chrysler in this action. In support of, and in opposition to, the motion respectively, the parties submitted voluminous affidavits, copies of pleadings in cases in which Schreiber had allegedly worked, and extensive memoranda of law. With this material before him and after oral argument, the Judge proceeded to analyze the motion on the

* Of the Third Circuit, sitting by designation.

1. The Eastern District uses the individual assignment system. Hence the action is before Judge Weinstein for all purposes until disposition.

theory that "[d]ecision turns on whether, in the course of the former 'representation,' the associate acquired information reasonably related to the particular subject matter of the subsequent representation." The Judge reviewed the subject matter of the cases on which Schreiber was claimed to have worked and the law as it appears in this Circuit from decided cases and in a comprehensive opinion (reported at 370 F.Supp. 581), concluded that "[d]isqualification of plaintiff's counsel is not warranted." From this decision Chrysler appeals.[2]

■ Our task on review is to endeavor to ascertain those general precepts which may influence or even control our decision and then relate them to the particular facts of this case. Fortunately, we have the benefit of recent pronouncements in the area by this Circuit. *Emle Industries, Inc.* v. *Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973). *See also Hull* v. *Celanese Corporation*, 513 F.2d 568 No. 74–2126 (2d Cir. 1975); *Ceramco, Inc.* v. *Lee Pharmaceuticals*, 510 F.2d 268 (2d Cir. 1975); *General Motors Corp.* v. *City of New York*, 501 F.2d 639 (2d Cir. 1974). As in *Emle*, we recognize "our responsibility to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." 478 F.2d at 564–65.

■ A starting point is of necessity the Code of Professional Responsibility. Canon 4 provides: "A Lawyer Should Preserve the Confidences and Secrets of a Client." Canon 9 also cautions that "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." But "ethical problems cannot be resolved in a vacuum." *Emle, supra*, at 565. Thorough consideration of the facts, as more

elaborately set forth in the opinion below, is required.[3] Nor can judges exclude from their minds realities of which fair decision would call for judicial notice.

Upon graduation from law school in 1965, Dale Schreiber was hired by Kelley Drye to commence work in September 1965. He worked at the firm briefly before accepting a position as a law clerk to a federal judge. His work at Kelley Drye began again in September 1966 and continued to February 1969.

Kelley Drye is one of New York's larger law firms, having had at the time some 30 partners and 50 associates. Several of New York's firms have well over 100 associates and over 50 partners. Many firms hire a dozen or more law graduates each year and it has now become the practice to hire for summer work (usually between their second and third years at law school) a substantial number of law students. These "summer associates" most frequently perform tasks assigned to them by supervising associates or partners. Many of the summer students do not return to the same firms with which they have been associated or even remain in New York City. Even after an initial association with a firm upon graduation, it is not uncommon for young lawyers to change their affiliation once or even several times. It is equally well known that the larger firms in the metropolitan areas have hundreds (collectively thousands) of clients. It is unquestionably true that in the course of their work at large law firms, associates are entrusted with the confidences of some of their clients. But it would be absurd to conclude that immediately upon their entry on duty they become the recipients of knowledge as to the names of all the firm's clients, the

---

**2.** The order was held appealable in *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corp.*, 496 F.2d 800 (2d Cir. 1974) (*en banc*).

**3.** As a district judge, now Chief Judge Kaufman, the author of the *Emle* opinion, said in *United States* v. *Standard Oil Company*, 136 F.Supp. 345, 367 (S.D.N.Y.1955), while refusing to disqualify an attorney:

When dealing with ethical principles, it is apparent that we cannot paint with broad strokes. The lines are fine and must be so marked. Guide-posts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.

contents of all files relating to such clients, and all confidential disclosures by client officers or employees to any lawyer in the firm. Obviously such legal osmosis does not occur. The mere recital of such a proposition should be self-refuting. And a rational interpretation of the Code of Professional Responsibility does not call for disqualification on the basis of such an unrealistic perception of the practice of law in large firms.

 Fulfilling the purpose of the disqualification remedy, "namely the need to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information" *Ceramco, Inc.* v. *Lee Pharmaceuticals, supra*, 510 F.2d at 271, does not require such a blanket approach. Nor are such broad measures required to maintain "in the public mind, a high regard for the legal profession" *General Motors Corp.* v. *City of New York*, *supra*, 501 F.2d at 649. Thus, while this Circuit has recognized that an inference may arise that an attorney formerly associated with a firm himself received confidential information transmitted by a client to the firm, that inference is a rebuttable one. *Laskey Bros. of W. Va., Inc.* v. *Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir. 1955), *cert. denied*, 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed.2d 814 (1956); *United States* v. *Standard Oil Co.*, 136 F.Supp. 345, 364 (S.D.N.Y.1955). And in *Laskey*, the court cautioned that:

> It will not do to make the presumption of confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high. This is particularly true where, as here, the attorney must prove a negative, which is always a difficult burden to meet.

224 F.2d at 827. The importance of not unnecessarily constricting the careers of lawyers who started their practice of law at large firms simply on the basis of their former association underscores the significance of this language. *See generally* Note, *Unchanging Rules in Changing Times: The Canons of Ethics and Intra-firm Conflicts of Interest*, 73 Yale L.J. 1058 (1964).

The Circuit has also adhered to the rule enunciated by Judge Weinfeld in *T. C. Theatre Corp.* v. *Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268 (S.D.N.Y.1953), that "where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited." And as to proof, Judge Weinfeld continued: "the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client" (p. 268). This case was the genesis of the now so-called "substantially related" test. But as the present Chief Judge of the Second Circuit Court of Appeals noted twenty years ago in *United States* v. *Standard Oil Company*, 136 F.Supp. 345, 355 (S.D.N.Y.1955): "[u]nfortunately, the cases furnish no applicable guide as to what creates a 'substantial' relationship." The cases available at that time were cases in which the relationship was "patently clear."[4] *Id.*

Over the intervening years the cases in which disqualification has been granted have also fallen into, or have come close to, the "patently clear" category. A review of some of the more recent decisions is illustrative.

In *Hull* v. *Celanese Corp.*, *supra*, an attorney who had worked in defense of the same case in the legal department of Celanese sought to join forces (albeit as a client) with the group suing Celanese and to be represented by the very law firm she had been opposing. The trial court initially denied the motion of the attorney to intervene, and little wonder that both trial and appellate court con-

4. The court noted that "[n]o such glaringly obvious relationship exists in this case" and, applying a substantial relationship test, refused to disqualify counsel. 136 F.Supp. at 355–59.

sidered the opportunity for disclosure of confidential information to require disqualification of the law firm, Judge Tenney saying on appeal: "Also, here the matter at issue is not merely 'substantially related' to the previous representation, rather, it is exactly the same litigation." 513 F.2d at 571.

In *General Motors Corp.* v. *City of New York, supra,* Reycraft, the attorney whose disqualification was in issue, while formerly serving with the Department of Justice in Washington, undisputedly "had substantial responsibility" in initiating a Government suit against General Motors alleging monopolization or attempted monopolization of the nationwide market for sale of buses. After returning to private practice, Reycraft sought to represent the City of New York in an antitrust suit against General Motors also claiming monopolization of bus sales. This court found that his subsequent action was "sufficiently similar to the 1956 *Bus* (United States v. General Motors No. 15816, E.D.Mich.1956) case to be the same 'matter' under DR 9–101(B)."[5] 501 F.2d at 650. Therefore disqualification was properly directed.[6] Recently in *Ceramco, Inc.* v. *Lee Pharmaceuticals, supra,* we interpreted the facts in *General Motors Corp.* as a case wherein the "matter . . . was almost identical to the dispute for which [Reycraft's] retention was sought." 510 F.2d at 271.

In *Emle Industries, Inc.* v. *Patentex, Inc., supra,* this court used the "substantially related" test as a guidepost in applying Canon 4 and disqualified the lawyer who first represented Burlington Industries, Inc. as a client and then turned about to represent a client suing a Burlington subsidiary. The court found that "there are matters in controversy in each

case—both the nature and scope of control, if any, exercised by Burlington, over Patentex—that are not merely 'substantially related,' but are in fact identical." 478 F.2d at 572.

In *Richardson* v. *Hamilton International Corp.,* 469 F.2d 1382 (3d Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973), Richardson had been an associate at a law firm representing Hamilton in connection with an SEC investigation of possible securities law violations. He had been vested with substantial responsibility in the matter, having interviewed Hamilton's officers and directors, discussed their forthcoming testimony, and mapped the strategy for presentation of the case. Quite obviously he had been the recipient of such information that he was not free to represent persons suing Hamilton on matters pertaining to a false and misleading proxy statement.

In *Chugach Elec. Ass'n* v. *United States District Court,* 370 F.2d 441 (9th Cir. 1966), disqualification was ordered where for some years the attorney involved had been General Counsel for Chugach. This attorney then appeared as counsel in an antitrust action against Chugach. This situation is "patently clear."

In *Motor Mart, Inc.* v. *Saab Motors, Inc.,* 359 F.Supp. 156, 157 (S.D.N.Y.1973), Motor Mart's attorney, in the course of his former service as Saab's counsel, had represented Saab in "essentially the same type of suit" (unlawful termination of an automobile dealership). He thus had had an opportunity to learn of Saab's policies, practices and procedures. It would have been a violation of his ethical obligations to turn this acquired knowledge against his former client.[7]

---

5. DR 9–101(B) directs:

 A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

6. However, the court recognized that: "If, for example, Reycraft had not worked on the 1956 *Bus* case, but was simply a member of the Antitrust Division at that time, a case not un-

like *Esso Export* [136 F.Supp. 345] would be before us." 501 F.2d at 652.

7. Our attention has been drawn to three district court cases, each dealing with the same attorney and his former association with a Los Angeles law firm that had represented Shell Oil Company in certain matters. *Gas-A-Tron of Arizona* v. *Union Oil Company of California,* No. Civ. 73–292–TUC–WCF

In contrast to the foregoing decisions, quite a different situation is presented here. Schreiber was not counsel for Chrysler in the sense that the disqualified attorneys were in those cases. Although Kelley Drye had pervasive contacts with Chrysler, Schreiber's relationship cannot be considered co-extensive with that of his firm. The evidence submitted to Judge Weinstein on the motion was admittedly somewhat conflicting. By affidavits submitted by the head of the litigation department at Kelley Drye, Chrysler sought to show not only the purportedly "substantially related" cases upon which Schreiber worked but also the extensive amount of Chrysler-dealer litigation in the office and in which Schreiber was concededly not involved. Schreiber responded by affidavit, detailing his responsibilities in Chrysler matters upon which he recalled working. Schreiber also obtained, amongst other things, supporting affidavits of Clark J. Gurney (the associate who handled the bulk of Chrysler dealer matters) and Hugh M. Baum, two former colleagues at Kelley Drye (presently employed elsewhere).

■ As we recently recognized in *Hull v. Celanese Corp., supra*:

> The district court bears the responsibility for the supervision of the members of its bar. . . . The dispatch of this duty is discretionary in nature and the finding of the district court will be upset only upon a showing that an abuse of discretion has taken place.

513 F.2d at 571. *See also Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1386 (3d Cir. 1972), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). Judge Weinstein was well aware of the tests to be applied. He examined (370 F.Supp. at 585–86) *Checker v. Chrysler*, an antitrust action and Schreiber's principal Chrysler case while at Kelley Drye, and concluded that the case was not substantially related to this litigation. As to other matters that Schreiber recalled working on, the judge was entitled to conclude that they also were not substantially related (*Ezzes v. Ackerman; Abikkarm v. Chrysler; Chrysler Motors Corp. v. Toffany; Polk v. Cross & Brown*). With respect to still others (*Bayside Motors, Inc. v. Chrysler; Long Island Motors, Inc. v. Chrysler; DiCarlo Dodge, Inc. v. Chrysler; Rocco Motors v. Chrysler; Buono Sales, Inc. v. Chrysler Motors Corp.; Chrysler Motors Corp. v. Estree Co.*) there was ample basis for crediting Schreiber's denial of having worked on them and concluding that Schreiber's involvement was, at most, limited to brief, informal discussions on a procedural matter or research on a specific point of law. The affidavits of Gurney and Baum provided support for such a conclusion. In this respect we do not believe that there is any basis for distinguishing between partners and associates on the basis of title alone—both are members of the bar and are bound by the same Code of Professional Responsibility. *See Consolidated Theatres v. Warner Bros. Circuit Management Corp.*, 216 F.2d 920, 927 (2d Cir. 1954). But there is reason to differentiate for disqualification purposes between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery for a limited and specific purpose relating solely to legal questions. In large firms at least, the former are normally the more seasoned lawyers and the latter

---

(D.Ariz., decided Aug. 27, 1974) (consolidated for purposes of memorandum and order with *Petrol Stops Northwest v. Continental Oil Co.*, No. Civ. 73–212–TUC–JAW); *Redd v. Shell Oil Co.*, Civil No. C–104–71 (D.Utah, decided Dec. 2, 1974); *Bonus Oil Co. v. American Petrofina Co.*, No. CV73–L–165 (D.Neb., decided May 1, 1974). The court in *Gas-A-Tron* granted a motion to disqualify the attorney and his new law firm. The courts in *Redd* and *Bonus Oil Co.* declined to do so. These three cases were similar in nature, and all three courts purported to apply the "substantially related" test. The evidence introduced pertaining to the activities of the attorney at his former firm was apparently nearly identical in each case, however, the *Gas-A-Tron* court characterized it quite differently than the other two. Without examining the full records in these cases, we would not care to hazard a conclusion as to which result was more appropriate.

the more junior. This is not to say that young attorneys in large firms never become important figures in certain matters but merely to recognize that some of their work is often of a far more limited variety. Under the latter circumstances the attorney's role cannot be considered "representation" within the meaning of *T. C. Theatre Corp.* and *Emle* so as to require disqualification. Those cases and the Canons on which they are based are intended to protect the confidences of former clients when an attorney has been in a position to learn them. To apply the remedy when there is no realistic chance that confidences were disclosed would go far beyond the purpose of those decisions. Chrysler was in a position here conclusively to refute Schreiber's position that his role in these cases had been non-existent or fleeting. Through affidavits of those who supervised Schreiber on particular matters or perhaps through time records, the issue was capable of proof. Chrysler instead chose to approach the matter in largely conclusory terms.[8] We cannot realistically subscribe to the contention that proof submitted for this limited purpose, by time records or otherwise, would have necessitated disclosure of any confidences entrusted to Kelley Drye.

▓ Judge Weinstein also concluded that Schreiber had rebutted any inference, arising merely from his former association with Kelley Drye, that he possessed confidences that can be used against Chrysler in this lawsuit. We think the district judge was plainly correct. There may have been matters within the firm which, had Schreiber worked on them, would have compelled disqualification here. But Schreiber denied having been entrusted with any such confidences. He was supported in this respect by the affidavits of Gurney and Baum. This was sufficient. See *Laskey Bros. of W. Va., Inc.* v. *Warner Bros. Pictures, Inc., supra,* at 827.

▓ Finally, in view of the conclusion that Schreiber's work at Kelley Drye does not necessitate disqualification, we agree with the district court that refusal to disqualify Schreiber and his firm will not create an appearance of impropriety. Neither Chrysler nor any other client of a law firm can reasonably expect to foreclose either all lawyers formerly at the firm or even those who have represented it on unrelated matters from subsequently representing an opposing party. Although Canon 9 dictates that doubts should be resolved in favor of disqualification, *Hull* v. *Celanese Corp., supra,* 513 F.2d at 571, it is not intended completely to override the delicate balance created by Canon 4 and the decisions thereunder.

▓ A decision to sustain Judge Weinstein's denial of the motion does not diminish the force of our decisions which hold that the right of the public to counsel of its choice or the possibility of a reduction of "both the economic mobility of employees and their personal freedom to follow their own interests." (Blake, *Employee Agreements not to Compete,* 73 Harv.L.Rev. 625, 627 (1960)), must be secondary considerations to the paramount importance of "maintaining the highest standards of professional conduct and the scrupulous administration of justice." *Hull* v. *Celanese Corp., supra,* 513 F.2d at 569.[9]

---

8. Example from a Kelley Drye (Chrysler) affidavit:

 "[Schreiber] obtained unmeasurable confidential information regarding the practices, procedures, methods of operation, activities, contemplated conduct, legal problems, and litigations of [Chrysler]." J.A. 29a.

9. We cannot endorse Judge Weinstein's comments appearing at 370 F.Supp. at 591 pertaining to the possible antitrust implications of limitations on the ability of associates to represent interests opposing clients of former firms. The Supreme Court presently has pending before it a question of the Sherman Act's application to the legal profession and, in particular, minimum fee schedules. *Goldfarb* v. *Virginia State Bar,* No. 74–70 [420 U.S. 944, 95 S.Ct. 1323, 43 L.Ed.2d 422] (argued April 1, 1975). Whatever the decision in that case, we would think it inappropriate to relax ethical standards directed at preserving a sound attorney-client relationship in the name of the anti-

Judge Weinstein has seen and heard counsel for the litigants and appraised the worth of their proofs and arguments. He has suggested that "[t]he parties should endeavor to complete preparations for trial so that this simple case can be speedily disposed of. . . ." If during such further preparation, or even during the trial itself, there should appear indications that confidential information not apparent from the proof submitted thus far is being used, the trial judge will be available for such action as may be appropriate.[10]

Order affirmed.

ADAMS, *Circuit Judge* (concurring):

In this case the plaintiff, Silver Chrysler Plymouth, Inc., presents breach of contract claims against Chrysler Motors Corp. based on diversity jurisdiction and on the Dealers Day in Court Act.[1] Chrysler Motors seeks to disqualify plaintiff's attorney, Dale A. Schreiber, formerly an associate in the law firm that is, and for an extended period of time has been, counsel to Chrysler Motors ("Kelley Drye"). During his tenure at Kelley Drye, Mr. Schreiber worked on numerous matters relating to Chrysler Motors, and Chrysler alleges that, deriving from such association, Mr. Schreiber acquired confidential information that would make his continuation on the present case unethical under the Code of Professional Responsibility.

Our role as an appellate tribunal is, of course, a limited one. We are asked to review the facts found below to determine whether they are clearly in error, and to ascertain whether the legal tests applied are correctly formulated.[2]

Like the majority and the trial court, I believe that the relevant test for disqualification of an attorney under Canons Four and Nine of the Code of Professional Responsibility is the test articulated by Judge Weinfeld in *T. C. Theatre Corp.* v. *Warner Brothers Pictures, Inc.*, and reaffirmed on a number of occasions by this Court:[3] "Where any substantial relationship can be shown between the subject matter of the former representation and that of a subsequent adverse representation, the latter will be prohibited."[4]

In this context, the question of "a substantial relationship" between the two matters is not one whose dimensions are delineated with mathematical precision. However, a case presenting an apt frame of comparison to the present suit is *Motor Mart, Inc.* v. *Saab Motors, Inc.*[5] There, disqualification of plaintiff's attorney was ordered in a Dealers Day in Court case. The challenged attorney had previously represented Saab "as its counsel on a regular basis" for a five-year period, during which time he had defended Saab in a state action charac-

trust laws. As long as the "substantially related" test is employed, we perceive no conflict between the two.

**10.** In *W. E. Bassett Company* v. *H. C. Cook Company*, 201 F.Supp. 821 (D.Conn.1962), aff'd, 302 F.2d 268 (2nd Cir. 1962), the trial court became alerted to the possibility of conflict as the result of a motion made pursuant to Rule 34 of the Federal Rules of Civil Procedure seeking disclosure of certain documents. (Items 12 and 13.) The Rule 34 motion brought to the forefront, by the nature of the material requested, the fact that the challenged attorney had individually represented Bassett prior to becoming a partner of the firm which represented Cook. Disqualification was ordered because "a *present* partner of [the challenged attorney] had actually represented one of the defendants in connection with some of the very same issues raised by the very

same plaintiff." 201 F.Supp. at 824 (emphasis in original.)

**1.** 15 U.S.C. § 1221 et seq. (1974).

**2.** *Zenith Corp.* v. *Hazeltine*, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *McAllister* v. *United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *Lavender* v. *Kurn*, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946); *Van Meter* v. *United States*, 47 F.2d 192 (2d Cir. 1931).

**3.** *Hull* v. *Celanese Corp.*, No. 74–2126, 513 F.2d 568 (2d Cir. 1975); *Ceramco, Inc.* v. *Lee Pharmaceuticals*, 510 F.2d 268 (2d Cir. 1975); *General Motors Corp.* v. *City of New York*, 501 F.2d 639 (2d Cir. 1974); *Emle Industries, Inc.* v. *Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973).

**4.** 113 F.Supp. 265, 268 (S.D.N.Y.1953).

**5.** 359 F.Supp. 156 (S.D.N.Y.1973).

terized as "essentially the same type of suit" as the *Motor Mart* case.[6]

Surely, were the proof to disclose that, while at Kelley Drye, Mr. Schreiber had worked in any significant respect on a case implicating issues "essentially the same" as those in dispute here, his disqualification would appear to be mandated. This is so because, given the identity of issues between the earlier and present cases, Mr. Schreiber would be unable to overcome the inference that he was privy to client disclosures germane to the case here, and the appearance of impropriety would be sufficiently strong so as to prohibit his continued subsequent representation.

The district court investigated, thoroughly and meticulously, the serious charges brought forward by Chrysler against Mr. Schreiber. Chrysler did not persuade the district court that Mr. Schreiber, as a Kelley Drye associate, had maintained any but a peripheral involvement in a Chrysler matter bearing a substantial relationship to the matters at issue here. Based on the proof, the district court undertook to catalog Mr. Schreiber's professional work while at Kelley Drye. The evidence credited by the district court included two affidavits, one by Mr. Schreiber himself, recollecting his cumulative participation in Chrysler matters, and the other by Mr. Clark J. Gurney, a former associate at Kelley Drye who, at the time in question, was the senior associate primarily responsible for Chrysler dealer litigation. These two affidavits complemented each other and disclosed that, generally, cases with which Mr. Schreiber was concerned raised factual and legal issues remote from the allegations in the present case. Mr. Gurney stated that Mr. Schreiber "did not work directly or indirectly on Chrysler dealer cases with the possible exception of researching a few specific points of law that may have been in-volved in a dealer case." One example of such legal research had been documented in the affidavit by Mr. Schreiber.

Chrysler was at liberty to substantiate its broad claims that Mr. Schreiber had acquired confidences requiring disqualification. Evidence of his participation in any material aspect of a dealer litigation might well have provided support sufficient to sustain the defendant's disqualification motion. The district judge suggested possible methods by which Chrysler might counter the affidavits, without breaching the very confidences that it was attempting to preserve. In particular, supportive data might have included the production of time sheets maintained by Kelley Drye that would disclose in detail Mr. Schreiber's work on Chrysler matters related to the case at hand. No such evidence was forthcoming. Considering all the testimony and other material before it, the district judge made a finding that "the evidence demonstrates that there was no actual knowledge" by Mr. Schreiber of pertinent, confidential information from Chrysler.[7]

Having found that Mr. Schreiber obtained no actual knowledge that would operate to disqualify him, the district court proceeded to acknowledge its obligation to guard against an appearance of impropriety in a case such as this. Public confidence in the integrity of legal institutions serves as an over-arching consideration beneath which attorneys practice their profession. The semblance of unethical behavior by practitioners may well be as damaging to the public image as improper conduct itself. Thus, charges of potential abuse of client communications merit close scrutiny by courts. In questions such as these, judges are in effect the caryatids charged with upholding the highest of ethical standards in the legal profession.

It cannot be gainsaid that in a civil suit[8] disqualification is in order where

---

**6.** *Id.* at 157.

**7.** 370 F.Supp. 581, 586 (E.D.N.Y.1973).

**8.** Additional, constitutional considerations are present in the criminal field. *See, United* States v. *Wisniewski*, 478 F.2d 274 (2d Cir. 1973); *United States* v. *Sheiner*, 410 F.2d 337 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969).

any inference can reasonably be maintained that client confidences may have been, or will be, violated. Here Kelley Drye has demonstrated only tangential involvement by Mr. Schreiber in any case related to the matter here. Therefore, Kelley Drye's allegations would be tantamount to a claim that a showing of previous work by an attorney for a client would, without more, preclude any subsequent representation antagonistic to that client by the attorney. While the courts must apply the Canons broadly, and are admonished to draw the line at the first hint of unethical behavior, it would not appear appropriate to disqualify attorneys in such a sweeping and speculative fashion.

Rather, disqualification would seem to depend on a more refined assessment of the earlier and later cases. This analysis must be done, in the first instance, by the trial court. The trial judge should focus on the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases. As part of its review, the court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy. Where a threshold quantum of similarity exists between the prior and current representations, courts must be scrupulous to ensure that even the appearance of impropriety is avoided.

The district court stated that, in order to justify disqualification, "Actual activities on specific cases by Schreiber must be demonstrated which would make it reasonable to infer that he gained some information about his former client of some value to his present client." [9] However, following a careful and conscientious review of the facts before it, the district court determined that the requisite showing of such a relationship was absent. I cannot conclude that such finding is erroneous.

Accordingly, I concur in the judgment affirming the district court. In so doing, however, candor requires that I express misgivings respecting the wisdom of attorneys accepting representations when former clients are involved. Although it was not established that the representation here warrants disqualification, my concurrence should not be understood as an approval of the practice, a practice which ofttimes necessitates an examination of the obligation due a former law firm and client, and imposes on the court the duty to probe the outer reaches of the Canons of Ethics.