Edna HEATHCOAT, Plaintiff,

v.

SANTA FE INTERNATIONAL CORPORATION, Jack Arnold, and Cameron Meadows Land Company, Defendants.

No. LR-C-80-601.

United States District Court,
E. D. Arkansas, W. D.

Feb. 25, 1982.

---

Edward O. Moody, Moody & Peace, Little Rock, Ark., for plaintiff.

Peter G. Kumpe, Wright, Lindsey & Jennings, Little Rock, Ark. and Robert C. Vanderet, O'Melveny & Myers, Los Angeles, Cal., for Santa Fe & Cameron Meadows.

Allen, Cabe & Lester, Little Rock, Ark., for Jack Arnold.

## MEMORANDUM OPINION

ROY, District Judge.

Pending before the Court is the plaintiff's motion to disqualify all of the attorneys for all of the defendants herein. From the briefs and affidavits which have been submitted, it appears that the facts are as follows:

On May 23, 1966, the plaintiff, Edna Heathcoat, executed her Last Will and Testament. This will was prepared for her by Edward L. Wright, then senior partner of the Little Rock law firm of Wright, Lindsey and Jennings. Mr. Wright died on Febuary 1, 1977. There are no records of any other services having been performed for the plaintiff by this law firm since the drawing of the will. On September 30, 1981, a form letter was sent by Wright, Lindsey and Jennings to Ms. Heathcoat which reads in relevant part as follows:

"Dear Friend,

"The Economic Recovery Tax Act of 1981, recently enacted, makes many substantial changes in the income, estate and gift tax laws. We are writing you because we previously prepared a Will, Trust, or other related documents for you, which may be affected by the tax

law changes. While all Wills and Trusts should be reviewed periodically, we believe that it is particularly important to do so at this time, since they may not accomplish what was intended after the new law becomes effective January 1, 1982.

\* \* \* \* \* \*

"There are many other important changes in the new law which may affect you. If you have any questions, we will be glad to discuss them with you.

"Cordially yours,

"Wright, Lindsey & Jennings"

Upon receipt of this letter, Ms. Heathcoat forwarded it to her attorney in the present case, Mr. Ed Moody, who filed the motion to disqualify which is presently under consideration. The motion requests (1) that Peter Kumpe (counsel for defendants Santa Fe International Corporation and Cameron Meadows Land Company) be disqualified because he is presently a member of the Wright, Lindsey and Jennings firm; (2) that Robert Vanderet, a member of the Los Angeles firm of O'Melveny and Myers, be disqualified due to the fact that he is associated with Peter Kumpe on the case; and (3) that H. William Allen (counsel for defendant Jack Arnold), presently a partner in the firm of Allen, Cabe and Lester, be disqualified because of his and his fellow partner Robert Cabe's former partnership in the Wright firm.

The plaintiff contends that the continued representation of the defendants by these attorneys is contrary to Canons 4, 5, and 9 of the American Bar Association's Code of Professional Responsibility, which provide respectively that:

Canon 4. A lawyer should preserve the confidences and secrets of a client.

Canon 5. A lawyer should exercise independent professional judgment on behalf of a client.

Canon 9. A lawyer should avoid even the appearance of professional impropriety.

It is well established that the district court bears the responsibility for the super-vision of the members of its bar, and that the dispatch of this duty is discretionary in nature and the finding of the district court will be upset only upon a showing that an abuse of discretion has taken place. *Gilbert v. City of Little Rock*, 622 F.2d 386 (8th Cir. 1980); *Fred Weber, Inc., v. Shell Oil Co.*, 566 F.2d 602 (8th Cir. 1977); *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975).

With regard to Canons 4 and 5, it has likewise been repeatedly held that courts will, as a general rule, disqualify counsel in an adversary proceeding when (1) the moving party was previously represented by the attorney whose disqualification he now seeks; (2) the matters embraced within the pending suit are *substantially related* to the matters or the cause of action for which attorney previously represented the moving party; and (3) the attorney is representing an adversary of the movant party in the pending suit. *State of Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d 380 (8th Cir. 1979); *Fred Weber, Inc., v. Shell Oil Co., supra; Black v. State of Missouri*, 492 F.Supp. 848 (W.D.Mo.1980).

■■ If the representation is against an existing client, not just a former one, the balance shifts even more significantly toward disqualification. *Melamed v. ITT Continental Baking Company*, 592 F.2d 290 (6th Cir. 1979); *Cinema 5, Ltd., v. Cinerama*, 528 F.2d 1384 (2d Cir. 1976). A threshhold question to be determined, then, is whether Ms. Heathcoat is presently a client of Wright, Lindsey and Jennings. The Court finds that this query must be answered in the negative. It is clear from the record before the Court that Ms. Heathcoat was indeed a client in May 1966 at the time of the preparation and execution of her will, but that the Wright firm's representation of her ceased at that time because no further services have been sought by her since. The "Dear Friend" letter which was sent to her by the firm cannot be reasonably construed to confer upon Ms. Heathcoat the status of a present client. The letter, which did not even contain her name upon its face, was sent by the firm as a courtesy to all persons for whom "wills,

trusts, or other related documents" had previously been drawn, advising them that the new tax laws could possibly necessitate a revision.

The essential element of an attorney-client relationship is the engagement or consultation of a lawyer by a client for the purpose of obtaining legal services or advice. *Diversified Industries, Inc., v. Meredith*, 572 F.2d 596 (8th Cir. 1977). Since Ms. Heathcoat has not sought any services or advice from Wright, Lindsey and Jennings since 1966, it is the finding of the Court that she has not been a client since that time.

■ Although not a present client, Ms. Heathcoat is without question a former client of the Wright firm, and that firm, together with a former partner of that firm, is now representing parties whose interests are undeniably adverse to those of Ms. Heathcoat's. The remaining question in determining whether such representation is in violation of Canons 4 and/or 5 is whether the matters involved in the present suit are *substantially related* to the matter upon which the Wright firm previously represented Ms. Heathcoat, namely, her will. If the two actions are found to be so related, then a presumption arises that confidences of the movant-client were disclosed to the former attorney (and, by implication, to the law firm), which confidences the attorney might use to the detriment of the movant in the current action. *State of Arkansas v. Dean Foods Products Co., Inc., supra; Black v. State of Missouri, supra; T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F.Supp. 265 (S.D.N.Y.1953).

The defendants' attorneys herein have attempted to rebut this presumption by denying having any actual knowledge (until the motion to disqualify was filed) whatsoever of the fact that Ms. Heathcoat was a client of the Wright firm in 1966, let alone any actual knowledge of any confidences which were imparted by her to Ed Wright. The law of the Eighth Circuit has not been

clarified as to whether the above-mentioned presumption is rebuttable. As a general rule, the presumption is "irrefutable" or "conclusive." *State of Arkansas v. Dean Foods Products, Inc., supra; Fred Weber, Inc., v. Shell Oil Co., supra; Black v. State of Missouri, supra.*[1] In its recent opinion in the *Dean Foods* case, the Court specifically declined to rule upon this issue.

■ It is clear, however, that the presumption extends to the attorney's partners, associates and employees. *State of Arkansas v. Dean Foods Products, Inc., supra; Consolidated Theatres v. Warner Bros. Circuit Management Corp.,* 216 F.2d 920 (2d Cir. 1954); *Black v. State of Missouri, supra* ; and as *Dean Foods* illustrates, the presumption may extend to co-counsel in some circumstances and may not in others. See 605 F.2d at 387–88.

■■ In the instant case, however, it is not necessary to decide whether the presumption is or is not rebuttable, in that the presumption itself is not present. As noted above, the presumption that confidential information has been disclosed by the client to a former attorney, which information may later be used against the client, does not arise unless there is a *substantial relationship* between the former representation and the present cause of action. The instant case revolves around whether the defendants misled the plaintiff as to the value of her Cameron Meadows Land Company stock when she sold it in 1977. The record shows that the Wright firm's 1966 representation of Ms. Heathcoat consisted of the preparation and execution of a simple will. Without disclosing the specific details of the will, the defendants' counsel's affidavits reflect that the file consists of but two pages, one of which was one page of handwritten notes made by Mr. Wright and the other a one-page will in which "all property" was bequeathed to a single beneficiary. Nowhere in the will itself or in Mr. Wright's notes is there any reference to any specific

---

1. Cf. *Silver Chrysler Plymouth, Inc., v. Chrysler Motor Corp.,* 518 F.2d 751 (2d Cir. 1975), which

held that the presumption is rebuttable.

assets or items of property. Particularly, there is no mention of the Cameron Meadows Land Company stock. Such an absence of any specific reference to the plaintiff's stock holdings in Cameron Meadows would lead to the inference that she did not discuss her ownership of it with Mr. Wright. The mere fact that the stock would naturally have been included within the "all property" disposition clause of the will does not, in the opinion of the Court, render the former representation of Ms. Heathcoat by the Wright firm "substantially related" to the present lawsuit.

Even if Ms. Heathcoat did specifically refer to the stock in the course of her consultation with Mr. Wright, the Court finds that referring to same in connection with the drafting of her will cannot be said to create a substantial relationship to the alleged fraud on the part of the defendants in 1977. Moreover, the plaintiff is now contending that she unwittingly sold her stock at an under-valued price due to the defendants' deliberate failure to disclose certain crucial information to her. Therefore, Ms. Heathcoat would have been incapable of disclosing to Mr. Wright information which she herself did not even possess. There is thus no possibility of Mr. Wright or any member of his firm ever having been privy to confidences concerning Ms. Heathcoat's Cameron Meadows Land Company stock, which confidences could have been used against her in the instant action.

The Court must consequently conclude that no violation of Canons 4 or 5 have occurred, and that none of the defense attorneys should be disqualified upon those grounds. Even so, there remains the question of whether any or all of the defendants' attorneys should be disqualified under the strictures of Canon 9, which, as noted above, warns against even the *appearance* of impropriety, regardless of whether improper acts have in fact occurred. This is not to say that an attorney must be disqualified from the representation of a litigant whenever there is a possibility that the public will perceive some impropriety in that representation, however remote that possibility may be. As the Court noted in

*Black v. State of Missouri, supra,* 492 F.Supp. at 848,

"While an attorney may be disqualified under Canon 9 in the absence of an actual breach of ethics, see *International Business Machines Corp. v. Levin,* 579 F.2d [271], 283 [3d Cir. 1978], 'there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur.' *Woods v. Covington County Bank,* 537 F.2d [804], 813 [5th Cir. 1976]; see *Church of Scientology of California v. McClean,* 615 F.2d 691, 693 (5th Cir. 1980); *Board of Educ. of City of New York v. Nyquist,* 590 F.2d 1241, 1247 (2d Cir. 1979); *R–T Leasing Corp. v. Ethyl Corp.,* 484 F.Supp. 950, 954 (S.D.N.Y. 1979)."

The Eighth Circuit's comments in *State of Arkansas v. Dean Foods Products Co., supra,* 605 F.2d at 383, are also helpful:

"Disqualification of counsel, like other reaches for perfection, is tempered by a need to balance a variety of competing considerations and complex concepts. Disqualification in spasm reaction to every situation capable of appearing improper to the jaundiced cynic is as goal-defeating as failure to disqualify in blind disregard of flagrant conflicts of interest. Between those ethical extremes lie less obvious influences on the interest of society in the orderly administration of justice, on the interest of clients in candid consultation and choice of counsel, and on the interest of the legal profession in its reputational soul.

"So, too, the judicial effort to light a disqualification path is unlikely to result in an early formulation of rules universally applicable to the Canons of the Code of Professional Responsibility. Rigid rules can be sterile and lacking in universal application. At the same time, an 'every case on its own facts' approach can be facile and unhelpful. Ethical experience is the key. Until more is gained, rigidity may be feasible at the far ends of the ethics spectrum, while flexibility governed by facts must reign in a gradually diminishing area between those extremes."

The discussion set forth above of Canons 4 and 5 clearly illustrates that a "reasonable possibility" of the public's perceiving some impropriety in the instant situation simply does not exist. When evaluating the public's view, "we must be careful not to accept the view of the most cynical as the true voice of the public." *International Elec. Corp. v. Flanzer*, 527 F.2d 1288, 1294 (2d Cir. 1975). Rather, "the Court must consider what it believes would be the view of the average layman." *Price v. Admiral Insurance Co.*, 481 F.Supp. 374, 378 (E.D.Pa. 1979). Considering the average layman's perception of this case, the Court believes "that such an individual would not be troubled by the current posture of the parties and counsel in this suit." *Black v. State of Missouri, supra*, 492 F.Supp. at 872, 873.

■ Further, due consideration must also be given to a client's interest in retaining the counsel of his choice, an interest which the courts have not regarded as insignificant. See, for example, *Board of Education of City of New York v. Nyquist, supra*, 290 F.2d at 1246; *Woods v. Covington County Bank, supra*, 537 F.2d at 813. In the present case, since the defendants have expressed great interest in retaining the services of their challenged counsel, and since the alleged conflicts of interest are more technical than real, the Court concludes that Canon 9 does not mandate the disqualification of any of the attorneys for the defendants. As the Court in *International Elec. Corp. v. Flanzer, supra*, 527 F.2d at 1295, noted,

> "Canon 9 . . . should not be used promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules."

Consequently, the plaintiff's motion to disqualify is hereby denied.