Elliot C.R. COOK, et al.

v.

Harry Clayton COOK, Jr.

v.

**DECHERT PRICE & RHOADS and William G. Klenk, II.**

Civ. A. No. 82–2853.

United States District Court, E.D. Pennsylvania.

Feb. 1, 1983.

See also, D.C., 559 F.Supp. 216.

Toll, Ebby & Gough, Seymour I. Toll, and Michele Langer, Philadelphia, Pa., for plaintiffs Elliot C.R. Cook, ECRC Limited, Inc. and Nicole's, Inc.

Hunt, Kerr, Bloom, Hitchner, O'Brien & Conrad, K. Robert Conrad, and Robert A. Prentice, Philadelphia, Pa., for defendant Harry Clayton Cook, Jr.

Elwood S. Levy, Philadelphia, Pa., for third-party defendant Dechert, Price & Rhoads.

Berle M. Schiller, Astor, Weiss & Newman, Philadelphia, Pa., for third-party defendant William G. Klenk, II.

## MEMORANDUM

NEWCOMER, District Judge.

Before the Court is the motion of the plaintiff, Elliot Cook, to disqualify the defendant's counsel and counsel's law firm from further participation in this case. The plaintiff contends that the attorney, K. Robert Conrad, and his firm, Hunt Kerr Bloom Hitchner O'Brien & Conrad (Hunt Kerr), must be disqualified because Mr. Conrad's former firm, Pepper, Hamilton & Scheetz (Pepper), had performed legal work, while Mr. Conrad was a partner at the firm, which had a "substantial relation" to the present litigation.

In order to understand this motion, some background to the present litigation is required. This dispute concerns the ownership of a well known Philadelphia restaurant, La Terrasse. Two brothers, Elliot Cook and Harry Clayton Cook, each claim ownership of the majority of the shares of Nicole's, Inc., which is the corporation that operates La Terrasse. While Clayton Cook is the record owner of the majority of the shares of Nicole's, Inc., Elliot Cook claims that these shares are held in trust by Clayton for the benefit of Elliot.

Nicole's, Inc. was formed in July, 1968. Up until that time it is undisputed that Elliot Cook was sole owner and manager of what is now known as La Terrasse. Clayton Cook was, at that time, an associate in the tax department at Pepper while K. Robert Conrad was a partner in the litigation department. Between 1966 and 1970 the Pepper firm did some legal work which was billed to Nicole's, Inc. This work, according to the bills submitted by Pepper to Nicole's, included the incorporation of Nicole's, advice concerning taxes and other financial matters, and obtaining a liquor license for the restaurant. Clayton Cook testified at his deposition that he probably drafted some of the documents by which Nicole's gained operating control of the restaurant in the Pepper office. It is not clear, however, whether this work was charged to Nicole's by Pepper or was done independently by Clayton Cook.

Mr. Conrad, by affidavit, states that he did no work of any kind on any matter relating to Elliot Cook while he was associated with the Pepper firm. He further states that the only other member of his firm who was associated with Pepper during the time in which Elliot Cook may have sought legal advice at Pepper was Mr. William O'Brien, who spoke to Elliot Cook twice, once in relation to an immigration problem and once in relation to a zoning problem. No substantive work was done on either of these matters according to Mr. O'Brien.

Disqualification of counsel under Canons 4 and 9 of the Code of Professional Responsibility[1] is required when "the subject matter of a pending suit in which the attorney represents an interest adverse to a prior employer is such that during the course of former representation the attorney 'might have acquired substantially related material.'" *American Roller Company v. Budinger,* 513 F.2d 982, 984 (3d Cir.1975) *quoting Richardson v. Hamilton International Corporation,* 469 F.2d 1382, 1385 (3d Cir.1972). Plaintiff argues that the legal work which was done by Pepper was "substantially related" to the present litigation, and that, consequently, Mr. Conrad and his firm should be disqualified.

■ This argument rests on the presumption that if any of the attorneys at Pepper who were consulted by Elliot Cook would be disqualified, then Mr. Conrad must also be disqualified because he was a member of the Pepper firm at that time. There is some support for this view. *See In Re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir.1976). I have no doubt that the disqualification of an attorney because of the prior representation of an adverse party should generally result in the disqualification of that attorney's entire firm, regardless of whether the individual members of that firm had any involvement in the prior representation. However, when the prior representation was by a firm with which the lawyer is no longer associated, an examination of the lawyer's actual participation in the prior representation is called for. This is especially true when the prior representation was by a large firm like Pepper, Hamilton & Scheetz.[2] *See Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corporation,* 518 F.2d 751 (2d Cir.1975) (Judge Adams of the Court of Appeals for the Third Circuit sitting by designation and concurring in the result). While an irrebuttable presumption may arise that counsel has shared confidences with those lawyers presently associated with him, the inference that a lawyer possesses confidences which might have been given to members of his former firm is rebuttable. *See id.* at 757.

■ Mr. Conrad has, by affidavit, stated that he did no work of any kind relating to Elliot Cook or the subject matter of this litigation while he was a member of the Pepper firm. This assertion has not been disputed by the plaintiff. It appears that the only other attorney now associated with Mr. Conrad who was at Pepper during the period in question, Mr. William O'Brien, also did no work substantially related to the present litigation. Because I find that no attorney now associated with Hunt Kerr in any way represented Elliot Cook in a matter substantially related to the present litigation, and because I refuse to automatically extend any disqualification which might apply to members of the Pepper firm to Mr. Conrad and his firm, I will deny the plaintiff's motion.[3]

---

1. Canon 4 states that "(a) lawyer should preserve the confidences and secrets of a client." Canon 9 states that "(a) lawyer should avoid even the appearance of professional impropriety."

2. During the period from 1966 to 1972 Pepper, Hamilton & Scheetz ranged in size from approximately 60 to 90 lawyers. Affidavit of K. Robert Conrad ¶ 3.

3. Because of the reasoning underlying this opinion, it is unnecessary for me to decide whether the work done at Pepper was substantially related to the present litigation, and whether it was actually performed for an adverse party. I do note, however, that a finding of substantial relationship would not have been supported by the record before me.