Michelle COOK, Sophia Lofton, and Leann Jorgenson, Plaintiffs,

v.

CITY OF COLUMBIA HEIGHTS, Patrick Hentges, Charles Kewatt, Lowell De-mars, Evelyn Nygaard, Gary Gorman, and Matthew Field, Defendants.

Civil No. 4–96–740.

United States District Court, D. Minnesota, Fourth Division.

Oct. 23, 1996.

Thomas J. White, Klein & White, Edina, MN, for Plaintiffs.

Terrance W. Moore, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for Defendants.

## ORDER

LEBEDOFF, United States Magistrate Judge.

The above-entitled matter is before the undersigned Magistrate Judge of District Court upon Defendants' Motion to Disqualify Plaintiffs' Attorney.

## I. BACKGROUND

In August, 1993, four tenants of certain rental property, owned by Lee Stauch and located within the City of Columbia Heights, sued the City; the City Council; the Mayor; Patrick Hentges (the City Manager); and Charles Kewatt (the Fire Chief), alleging violations of the United States Constitution and Title 42 U.S.Code Section 1983. (*See* Affidavit of Thomas J. White hereinafter "White Aff" at ¶ 2). In that lawsuit, entitled *Jacobs, et al. v. City of Columbia Heights, et al.,* Court File NO. 4–93–767, the plaintiffs alleged that they had been told that they must move from their homes or face arrest and criminal prosecution. *Id.* They sought a declaration that a certain City Ordinance, pursuant to which the order to move had been given, was unconstitutional because it did not provide for prior notice to tenants or the opportunity for a hearing. *Id.* The plaintiffs also sought a temporary restraining order so that they could continue to occupy their homes. *Id.*

The City of Columbia Heights was initially represented by Gregory J. Woods, Esq. of Kalina, Wills & Woods ("Kalina"). On September 22, 1993, USF & G, the City's insurer, retained Keith J. Kerfeld, Esq., of Rider, Bennett, Egan & Arundel ("Rider Bennett"), to represent the City in the *Jacobs* case. (*See* White Aff at ¶ 3).

Mr. Kerfeld and a Rider Bennett Associate, Peter R. Salisbury, Esq., worked on the *Jacobs* matter until October 13, 1993, Mr. Kerfeld having filed an answer on October 4. (*See* Answer, billing records, and October 4, 1993 letter, Moore Affidavit, Exhibits C, D, and E, respectively). Messrs. Kerfeld and Salisbury billed a total of 27.6 hours for their work. (*See* White Aff at ¶ 4).

On October 4, 1993, Mr. Kerfeld signed a Substitution of Counsel to enable Kalina to substitute for Rider Bennett and resume control of the case. (*See* White Aff at ¶ 5).

The *Jacobs* case was settled in April of 1994, in a manner that allowed the plaintiffs to remain in their homes. Kalina represented the City during the entire pendency of the litigation except for the approximately 21 day period during which Mr. Kerfeld and his associate were involved. *See* White Aff at ¶ 6.

During 1993, Thomas J. White, Esq., Plaintiffs' attorney in the present case, was an Associate at Rider Bennett. Neither during the period in which Mr. Kerfeld represented the City nor thereafter did Mr. White work on the *Jacobs* matter; he billed no time relating to the *Jacobs* matter; he did not discuss the *Jacobs* matter with anyone; and he testifies that he did not then know of the existence of the *Jacobs* matter. *See* White Aff at ¶ 10.

During 1993, Rider Bennett held no regular litigation meetings that included associates and at which there were general discussions of case files or pending matters. *See* White Aff at ¶ 7. Mr. White's office was on a different floor from the floor on which Kerfeld's and Salisbury's offices were located. *See* White Aff at ¶ 9. The Rider Bennett lawyers stored their case files in separate cupboards and did not commonly look at material in the cupboards of other lawyers in the firm. *See* White Aff at ¶ 8. Although Mr. White occasionally performed work for Mr. Kerfeld, none of that work related to the *Jacobs* matter. *See* White Aff at ¶ 10.

In July 1995, Mr. White having been approached by several potential clients who had claims against the City of Columbia Heights relating to the City's use of the ordinance that was the subject of the *Jacobs* litigation, investigated the matter and spoke to Ms. Shelley Jensen, who had represented the *Jacobs* plaintiffs. Ms. Jensen said that she had settled the *Jacobs* matter and that Kalina had represented the City in that case. She gave Mr. White a copy of the *Jacobs* complaint. *See* White Aff at ¶ 11.

In July of 1995, Mr. White commenced the present action against the City and the other named Defendants. The present case attacks the ordinance that was the subject of the *Jacobs* case on the basis of violations of the U.S. Constitution, Title 42 U.S.Code Sections 1981, 1982 and 1983; the U.S. Fair Housing Act and the Minnesota Human Rights Act. The Plaintiffs in the present case have asked that the ordinance be declared unconstitutional. *See* White Aff at ¶ 12.

In September of 1995, Mr. White told Ms. Joan Quade, attorney for Columbia Heights until July of 1996, that he had once worked for Rider Bennett. *See* Affidavit of Joan Quade at ¶ 2. When, in October 1995, Mr. White learned of Rider Bennett's brief and relatively minor involvement in the *Jacobs* case, he testified that he reviewed the Minnesota Rules of Professional Conduct and concluded that his prior employment with Rider Bennett gave rise to no conflict of interest. *See* White Aff at ¶ 14.

In April, 1996, Judge Michael Davis certified the present case as a Class Action. In August, 1996, Judge Davis dismissed the Constitutional and Minnesota Human Rights Act claims.

In August of 1996, Terrance Moore, Defendants' attorney first became aware that Rider Bennett had represented the City of Columbia Heights in the preceding lawsuit. *See* Affidavit of Terrance W. Moore at ¶ 7. Subsequently, Defendants moved to disqualify Mr. White because of his previous employment with Rider Bennett.

## II. ANALYSIS

### A. Introduction

Defendants contend Mr. White's prior association with a firm which represented the City of Columbia Heights constitutes a conflict of interest requiring the disqualification of Mr. White from representing Plaintiffs in this litigation. Specifically, Defendants contend that Mr. White's representation of Plaintiffs is a violation of Rule 1.9(a) of the Minnesota Rules of Professional Conduct, and that Mr. White should be disqualified per *Jenson v. Touche Ross*, 335 N.W.2d 720 (Minn.1983).

A fundamental responsibility of any trial court is the supervision of the attorneys who appear and practice before it. *See Cohen v. Hurley*, 366 U.S. 117, 123–24, 81 S.Ct. 954, 958–59, 6 L.Ed.2d 156 (1961), *Federal Deposit Ins. Corp. v. Amundson*, 682 F.Supp. 981 (D.Minn.1988). That responsibility is carried out consistent with the proviso that "[b]ecause of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny." *Harker v. C.I.R.*, 82 F.3d 806, 808 (8th Cir.1996).

Rule 1.9(a) of the Minnesota Rules of Professional Conduct states:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Minn.R.Prof.C. 1.9(a) (1996).

The Minnesota Supreme Court has established a three-part test in applying the Rules of Professional Conduct in a disqualification case:

(a) Considering the facts and issues involved, is there a substantial, relevant relationship or overlap between the subject matters of the two representations.

(b) If so, then certain presumptions apply; first it is presumed, irrebuttably[,] that the attorney received confidences from the former client and he or she will not be heard to claim otherwise. Second, it is also presumed, but subject to rebuttal, that these confidences were conveyed to the attorney's affiliates.

(c) Finally, at this stage, if it is reached, the court weighs the competing equities.

*Jenson*, 335 N.W.2d at 731–32 (citations omitted). The *Jenson* court augmented this three part test by stating:

As the law first developed, disqualification was found quite readily, since the integrity of the profession in the eyes of the public was paramount, and often the appearance of impropriety was enough. In more recent years, attention has also been paid to countervailing issues, having in mind the organization and structure of today's law practice with the increase in size of law firms and the mobility of lawyers among firms. Thus it is recognized that disqualification separates the client from his chosen counsel, causes delay, and may subject both the client and the dis-

**186**

qualified lawyer to significant economic hardship.

*Id.* at 731.

At the outset, it is important to point out that the facts of this case do not lend themselves to a technical analysis under *Jenson.* The *Jenson* test contemplates a very similar, but nonetheless different factual scenario. That test contemplates a situation where Lawyer represents Client while practicing at Firm # 1 and subsequently moves his practice to Firm # 2 and represents parties adverse to Client. The test seeks to determine whether Lawyer's associates and partners at Firm # 2 should be disqualified.

In the case at bar, the movant wishes to disqualify Lawyer because of his association with Firm # 1. This requires an additional imputation of loyalty or confidence not contemplated in *Jenson,* i.e. from the attorney in Firm # 1 who represented the former client to his or her associates and partners. Thus, as a threshold matter, it must be determined whether the law permits this additional imputation.

### B. *Silver Chrysler*

■ In 1975, the Second Circuit addressed this issue in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2nd Cir.1975). The *Silver Chrysler* court determined that a lawyer moving from a firm and representing a new client against the former firm's client may rebut the presumption that he actually acquired confidential information about the first firm's client. Most circuits have followed the lead of the *Silver Chrysler* court. *See e.g. Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 723 (7th Cir. 1982) (presumption may be rebutted by clear and effective showing attorney had not knowledge of confidences and secrets of former firm's client); *Gas–A–Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322, 1324 (9th Cir.1976) (presumption may be rebutted by showing attorney had not

actually obtained any confidential information during first representation that would be useful in second representation), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). *See generally* Steven H. Goldberg, *Successive Conflict Disqualification,* 72 Minn.L.Rev. 227, 250 n. 107 (1987).[1]

In the Eighth Circuit, however, the question is somewhat unclear. *See EZ Paintr Corp. v. Padco, Inc.,* 746 F.2d 1459, 1461 (Fed.Cir.1984) (applying Eighth Circuit law). The issue was first discussed in *State of Arkansas v. Dean Foods Products Co., Inc.,* 605 F.2d 380 (8th Cir.1979). Therein, the court suggested that it would not apply *Silver Chrysler* universally. It went on, however, to expressly reserve judgement on the issue, stating: "[i]n all events, it is not necessary for us here to reach the broad question of whether the presumption may under some circumstances be rebuttable." Thus, we were left with a regrettably ambiguous state of the law. That ambiguity was cured to a large degree by two subsequent cases.

First, in *Harker v. C.I.R.,* 82 F.3d 806, 808–809 (8th Cir.1996), the court cleaned the slate for Minnesota with regard to this issue, stating:

The [movants'] reliance on *Dean Foods* and *Fred Weber* [*, Inc. v. Shell Oil Co.,* 566 F.2d 602 (8th Cir.1977) ] ... is misplaced because those cases interpret the Model Code, which, as we already have pointed out, does not apply in the Tax Court, for that court has adopted the Model Rules. In *Dean Foods* and *Fred Weber,* we concluded that, in order to prevent the "appearance of impropriety," a lawyer is presumed under the Model Code to have knowledge of all confidential information relating to clients of the lawyer's firm and thus is disqualified from taking a position adverse to the former client in a substantially related matter.... Because the Tax Court has adopted the Model Rules, which

---

1. Defendants attempt to distinguish these cases in a footnote by arguing that these cases "generally involve[d] large firms, huge clients, and unrelated matters." *See* Defendants' Memorandum of Law Supporting their Motion to Disqualify Plaintiffs' Attorney at 8. As a factual matter, the Rider Bennett law firm is larger than the firm

involved in *Silver Chrysler,* and the challenged lawyer in that case actually performed work on files of the former client. *Silver Chrysler,* 518 F.2d at 753. Thus, the reasoning of that case and its progeny is not distinguishable from the case at bar.

do not incorporate the Model Code's appearance-of-impropriety standard, those cases interpreting the Model Code do not govern our review of Tax Court's decision. *Id.* In an order of the Minnesota Supreme Court dated June 13, 1985, the Court enacted the Minnesota Rules of Professional Conduct and repealed the former Minnesota Code of Professional Responsibility. Thus, under *Harker, Dean Foods* is not relevant in determining the applicable law in Minnesota.

Second, in *EZ Paintr*, 746 F.2d at 1461 (applying Eighth Circuit law), the court gave courts in the Eighth Circuit their clearest guidance on the issue, stating:

> The precise rule in disqualification applied in the Eighth Circuit … is not clear [footnote omitted] but we are satisfied that Circuit would not be less solicitous of client confidentiality than the general weight of authority which is that—where a substantial relationship is found to exist between two adverse matters (and sides) in which the challenged attorney or his firm has participated and will participate—there is a presumption (in the situation of a private lawyer's 'changing sides') that confidential disclosures passed to the challenged lawyer, but that presumption is rebuttable.

Consistent with the decision in *EZ Paintr*, this court adopts the law established by the decision in *Silver Chrysler*, 518 F.2d 751, and its progeny. Thus, as established in *Silver Chrysler*, the framework for analysis is as follows:

(1) In assessing the similarity of the two representations, this court will compare Mr. Kerfeld and Mr. Salisbury's prior representation to Mr. White's present representation.

(2) If the two representations are substantially related, then, first, the court will presume irrebuttably that Mr. Kerfeld and Mr. Salisbury received confidences from the City. Second, the court will presume that Mr. White received confidential information from Mr. Kerfeld and Mr. Salisbury by virtue of being associated with Rider Bennett. This, presumption, however, may be rebutted.

### 1. Substantial Relation

"To satisfy the substantial relationship test, the moving party must establish 'that the relationship between issues in the prior and present cases is patently clear [and] the issues involved have been essentially the same …," *Federal Deposit Ins. Corp v. Amundson*, 682 F.Supp. 981, 985 (D.Minn. 1988) (citations omitted).

■ This case arises from the same transaction as the one in which the Defendant was represented by Rider Bennett. *See* Complaints, Moore Aff, Exh. A and B. It involves the specific application of a City Ordinance to a particular building. The claims are either identical or essentially the same. Plaintiffs point out that they have added claims under the Minnesota Human Rights Act and additional constitutional claims. They also note, however, that these claims were summarily dismissed by Judge Davis in August. Plaintiffs further point out that the plaintiffs are different in the two actions. However, Defendant argues that the *Jacobs* plaintiffs would be members of the present class, but for their prior settlement. The relationship between the issues in these two cases is patently clear and the issues are essentially the same. Thus, the first prong of *Jenson* is satisfied.

### 2. Presumptions

Applying the first presumption under *Jenson*, Kerfeld and Salisbury are irrebuttably presumed to have received confidences from Defendants. Applying the presumption under *Silver Chrysler*, Mr. White is presumed to have received these confidences by virtue of his association with the Rider Bennett firm. Thus, the burden is on Mr. White to rebut that presumption.

Mr. White testified that neither during the period in which Mr. Kerfeld represented the City nor thereafter did Mr. White work on the *Jacobs* matter; he billed no time relating to the *Jacobs* matter; he did not discuss the *Jacobs* matter with anyone; and he did not then know of the existence of the *Jacobs* matter. *See* White Aff at ¶ 10. During 1993, Rider Bennett held no regular litigation meetings that included Associates and at which there were general discussions of case files or pending matters. *See* White Aff at ¶ 7. Mr. White's office was on a different

floor from the floor on which Kerfeld's and Salisbury's offices were located. *See* White Aff at ¶ 9. The Rider Bennett lawyers stored their case files in separate cupboards and did not commonly look at material in the cupboards of other lawyers in the firm. *See* White Aff at ¶ 8. Although Mr. White occasionally performed work for Mr. Kerfeld, none of that work related to the *Jacobs* matter. *See* White Aff at ¶ 10.

While it is difficult to prove a negative, the court finds that Mr. White has met his burden, and Defendants have not alleged any facts which contradict Mr. White's testimony. Consequently, under *Silver Chrysler* and *EZ Paintr*, disqualification is improper.

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Disqualify Plaintiffs' Attorney is **DENIED.**