[No. 28761-3-I.   Division One.   February 22, 1993.]

MOHINDER SINGH TEJA, *Appellant,* v. SUKHPAL SINGH SARAN, *Respondent.*

*Michael B. King, Bruce P. Weiland,* and *Lane Powell Spears Lubersky,* for appellant.

*Satwant S. Pandher,* for respondent.

GROSSE, J. — Mohinder Singh Teja appeals an adverse judgment, alleging as error the trial court's refusal to disqualify the respondent's attorney on the basis of a conflict of interest. We find that a conflict existed, but affirm the judgment.

Teja was a former client of the respondent's attorney, Satwat Singh Pandher. Teja was jailed on a domestic violence charge in January 1988. During Teja's confinement, he consulted and retained Pandher to represent him in that action. Pandher also represented Teja's acquaintance and business partner, the respondent, Sukhpal Singh Saran, on unrelated matters. During one of Teja's consultations with Pandher, Teja questioned Pandher about a possible claim against Saran based upon a business dispute. Teja and Pandher disagree as to the length and substance of the conversation. At a minimum, both parties agree Teja told Pandher that Saran owed him money and the amount of the alleged debt. Pandher told Teja the amount was too small to warrant attorney involvement and advised Teja to file a

claim in small claims court. Teja also claims he showed Pandher the bills, receipts, and documentation regarding his claim, discussing the claim in greater detail.

The association between Teja and Pandher deteriorated during the pendency of the domestic violence action, and Teja asked Pandher to withdraw. Teja subsequently filed a claim against Saran in small claims court for $1,900. The day before trial in small claims court, Pandher appeared in the action for Saran and filed a counterclaim for approximately $17,000, together with a motion to remove the case to superior court. The motion was granted. Teja appeared in the action pro se and amended his claim to approximately $34,000. The case was arbitrated, and when Teja's claim was denied in arbitration, he requested a trial de novo.

Two weeks before trial, Teja filed a motion to disqualify Pandher as attorney for Saran, alleging a conflict of interest. Pandher contested the motion and maintained no conflict existed because he had not received material confidential information relating to the current claim. The trial court denied the disqualification motion, basing its decision upon Pandher's contention that no material confidences were disclosed. The trial court entered judgment for Teja in the amount of $1,600 and for Saran in the amount of $5,340. Teja now challenges the trial court's denial of his motion to disqualify and seeks to reverse and remand the judgment.

The initial inquiry in this case is whether an attorney/client relationship existed between Teja and Pandher with regard to the action for the debt. The parties both acknowledge that Pandher was actively representing Teja in the unrelated domestic violence case, but Pandher maintains the allegedly short conversation regarding Saran's debt was insufficient to create an attorney/client relationship in the context of the disputed debt.

■ The existence of an attorney/client relationship is a question of fact, the essence of which may be inferred from the parties' conduct or based upon the client's reasonable subjective belief that such a relationship exists. *Bohn v. Cody*, 119 Wn.2d 357, 363, 832 P.2d 71 (1992). Even a short

consultation may suffice to create an attorney/client relationship, and an important factor in determining the existence of the relationship is the client's subjective belief. *In re McGlothlen*, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983); *State ex rel. Slusser v. Billet*, 52 Wn. App. 561, 563-64, 762 P.2d 350 (1988), *review denied*, 111 Wn.2d 1032 (1989).

Pandher's advice to Teja, viewed in light of their existing professional relationship, demonstrates behavior consistent with an attorney/client association. Pandher's actions were sufficient to support Teja's reasonable belief that such a relationship existed. Teja acted consistently with Pandher's suggestion and filed suit in small claims court against Saran. Although none of these incidents in isolation might be enough to establish an attorney/client relationship, the circumstances in their entirety were sufficient to form an attorney/client association with regard to the subject matter of this claim. We also note that if Teja and Pandher had not already established a professional relationship the exchange between Teja and Pandher would probably be insufficient in itself to create such a relationship.

■ Because an attorney/client relationship existed, Pandher's actions are governed by the Rules of Professional Conduct. The determination of whether an attorney has violated the Rules of Professional Conduct is a question of law and reviewed de novo. *Eriks v. Denver*, 118 Wn.2d 451, 457-58, 824 P.2d 1207 (1992); *State v. Greco*, 57 Wn. App. 196, 200, 787 P.2d 940, *review denied*, 114 Wn.2d 1027 (1990).

The Rules of Professional Conduct govern subsequent representations adverse to former clients.[1] RPC 1.9 provides:

---

[1] The analysis of attorney conflicts with former clients is complicated by the fact that Washington cases construe common law, the previously enacted Model Code of Professional Responsibility, and the Model Rules of Professional Conduct currently in force. The rules governing former client conflicts have grown increasingly precise and, accordingly, earlier cases must be viewed in light of the Rules of Professional Conduct currently in force. "The Rules of Professional Conduct are mandatory in character. The rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." RPC Preliminary Statement.

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or

(b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except as rule 1.6 would permit.

Teja asserts that Pandher violated RPC 1.9(a) by representing Saran in the same or a substantially related matter when Saran's interests were materially adverse to Teja. Teja argues that he need not prove material confidences were also disclosed to Pandher. Saran disagrees, contending that Teja must show the matter was substantially related and Pandher acquired material confidential information.[2]

Saran supports his position by relying on decisions that focus on former client conflicts created when one incoming attorney in a firm has confidential information about a client from his former firm now adverse to the new firm's current client. These cases address the extent to which that conflict may be imputed to others in the firm.[3] Such situations are

---

[2]Saran relies on *Messenger v. Murphy*, 33 Wash. 353, 74 P. 480 (1903) in support of this contention. The *Messenger* court held that an attorney who advised a creditor in a collection action, acting in his capacity as general counsel, was not precluded from representing the debtor in the subsequent attachment proceeding, reasoning that no confidential information had passed that would be prejudicial to the creditor. *Messenger*, however, must be construed consistently with the Rules of Professional Conduct. To the extent that the court departed from the Rules of Professional Conduct currently promulgated by the Washington Supreme Court, it is not controlling.

[3]*See, e.g., Kurbitz v. Kurbitz*, 77 Wn.2d 943, 468 P.2d 673 (1970) (attorney disqualified from representing wife in divorce action when attorney previously worked at a firm representing the husband's businesses and family estate with access to and possession of the estate file; it was not necessary to prove attorney actually possessed confidential information); *Alpha Inv. Co. v. Tacoma*, 13 Wn. App. 532, 536 P.2d 674 (1975) (former deputy prosecutor precluded from representing adverse party to County because all deputy prosecutors had access to the case file, even though attorney never worked in civil department assigned to the case); *First Small Business Inv. Co. v. Intercapital Corp.*, 108 Wn.2d 324, 738 P.2d 263 (1987) (cocounsel previously consulted by officers of adverse party

governed by RPC 1.10, which requires that the matter be substantially the same *and* that the incoming lawyer acquired material confidences or secrets. RPC 1.10(b). These decisions are inapposite, however. The instant case concerns a sole practitioner who has personally represented both the former and current client. Accordingly, the narrow question before this court is whether in such a case the former client must prove that the matter is substantially the same *and* that confidential material information was exchanged in order to disqualify the attorney.

Under the plain language of RPC 1.9, the test is stated in the alternative: an attorney may not proceed if (1) he or she is utilizing confidences to the disadvantage of the former client, *or* (2) the former client's interests are adverse *and* the matter is substantially related. In defining the scope of the second requirement, the comment to rule 1.9 of the Model Rules of Professional Conduct states:

> The scope of a "matter" for purposes of paragraph (a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

Model Rules of Professional Conduct, rule 1.9 comment, at 38 (1983).[4] This prohibition against side switching is based not only upon the duty prohibiting the disclosure of confi-

---

was precluded from representation of current client and breached confidences would not be presumed; absence of evidence that confidences were disclosed allowed representation); *United States ex rel. Lord Elec. Co. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556 (W.D. Wash. 1986) (attorney previously representing defendant in a substantially related action was disqualified from representing plaintiff, regardless of whether confidences were disclosed, but the attorney's firm was not disqualified because it effectively screened the attorney from the litigation).

[4] Although Washington has not formally adopted the commentary to the Model Rules of Professional Conduct, the commentary is instructive in exploring the underlying policy of the rules.

dences, but also upon a duty of loyalty.[5] Few Washington cases have addressed the issue of an attorney switching sides and representing a party adverse to a former client in the same matter.[6]

■ The plain language of RPC 1.9 indicates actual proof of disclosure of confidential information is not necessary if the matters are substantially related. The weight of authority from other jurisdictions similarly interprets the rule as not requiring proof of disclosure of confidential information.[7]

---

[5]"Objections can be raised to the lawyer's side switching on the grounds of both confidentiality and loyalty." C. Wolfram, *Modern Legal Ethics* § 7.4.2, at 359 (1986).

[6]Two Washington cases have examined the application of RPC 1.9; both cases address its application to the office of the prosecuting attorney. In *State v. Stenger*, 111 Wn.2d 516, 760 P.2d 357 (1988), the court held that a prosecuting attorney who had previously represented the defendant on criminal charges was precluded from prosecuting a first degree aggravated murder charge because the prior convictions were so closely interwoven with the aggravating circumstances and death penalty now sought by the State. *Stenger*, 111 Wn.2d at 521-22. The court distinguished conflicts arising in prosecutorial actions from conflicts arising in civil litigation. *Stenger*, 111 Wn.2d at 522-23. Following *Stenger*, the court in *State v. Greco, supra,* held that a county prosecutor who previously represented a county auditor in his official capacity was not precluded from prosecuting the officer.
In a case predating the RPC, *National Bank of Commerce v. Fountain*, 9 Wn. App. 727, 514 P.2d 194 (1973), the court held that an attorney who had previously represented the mortgagor in transactions substantially related to the land at issue was not precluded from representing the mortgagee in a foreclosure action. The court's decision is largely based upon the fact that the trial court record was inadequate for review and confidential information did not appear to be used at trial. The court did not clearly resolve the issue of whether client confidences must be proved before an ethical violation will arise.

[7]Several decisions interpret model rule 1.9(a) as not requiring the former client to prove confidences were divulged. *See Foulke v. Knuck*, 162 Ariz. 517, 784 P.2d 723 (Ct. App. 1989) (former client need not prove confidential information was passed because model rule 1.9(a) is mandatory); *Brent v. Smathers*, 529 So. 2d 1267 (Fla. Dist. Ct. App. 1988) (conflict existed based upon conflict of loyalty even though confidential information may not have been utilized); *see also United States ex rel. Lord Elec. Co. v. Titan Pac. Constr. Corp., supra*; *Junger Util. & Paving Co. v. Myers*, 578 So. 2d 1117 (Fla. Dist. Ct. App. 1989); *Martindale v. Richmond*, 301 Ark. 167, 170-71, 782 S.W.2d 582, 584 (1990); *Oxford Dev. Minn., Inc. v. County of Ramsey*, 428 N.W.2d 434 (Minn. Ct. App.

We agree and hold that under RPC 1.9(a), former clients need not prove that actual confidences were divulged. Because Teja consulted Pandher about the underlying circumstances of the current suit between Teja and Saran and the matter is substantially related, Pandher was precluded from continuing his representation of Saran absent consent from Teja. At that point, Pandher should have withdrawn.[8] The trial court erred by not granting the motion to disqualify.

Teja argues the trial court's error requires reversal of the judgment, urging this court to adopt a "per se" presumption of prejudice when the trial court errs by refusing to disqualify an attorney on the basis of a client conflict of interest. Despite Teja's assertion that this is an issue of first impression, the Washington Supreme Court has held that when a motion for disqualification is challenged after judgment has been entered, the judgment will not be reversed unless the breach of ethics prejudiced the interests of the former client. *First Small Business Inv. Co. v. Intercapital Corp.*, 108 Wn.2d 324, 331-32, 738 P.2d 263 (1987). Teja attempts to distinguish *First Small Business* on the basis that it concerned imputed disqualification and relationships of attorneys within firms. However, the language of the opinion makes no such distinction. The court distinguished interlocutory appeals and appeals of final judgments:

---

1988); *Reading Anthracite Co. v. Lehigh Coal & Nav. Co.*, 771 F. Supp. 113 (E.D. Pa. 1991); *Green v. Montgomery Cy., Ala.*, 784 F. Supp. 841 (M.D. Ala. 1992).

[8]The commentary to model rule 1.7 sheds light on the principles underlying the rules:

"Loyalty is an essential element in the lawyer's relationship to a client. . . . If [an impermissible] conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See Rule 1.16. Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent *any of the clients* is determined by Rule 1.9." (Italics ours.) Model Rules of Professional Conduct, rule 1.7 comment, at 30 (1983).

[R]eversal of a trial court judgment is not required unless the former client can show he was prejudiced by the attorney's breach of ethics:

. . . .
. . . The Court of Appeals irrebuttable presumption of prejudice . . . despite the lack of evidence showing an effect upon the judgment, is erroneous and in conflict with prior case law.

*First Small Business*, 108 Wn.2d at 331-32. This principle is consistent with the decisions of other jurisdictions. *See, e.g., Junger Util. & Paving Co. v. Myers*, 578 So. 2d 1117 (Fla. Dist. Ct. App. 1989); *People v. Moore*, 30 A.D.2d 720, 291 N.Y.S.2d 706 (1968); *see also* Annot., *Propriety and Effect of Attorney Representing Interest Adverse to That of Former Client*, 52 A.L.R.2d 1243, 1288 (1957).

Teja contends that such a rule will force clients to disclose confidences in order to show prejudice. We do not, however, hold that a client must divulge confidential information to establish prejudice. Rather, we require the client to identify any portion of the record where it appears a confidence may have been utilized. If a confidence appears to have been employed, but the nature of its prejudice is unclear, then the presumption of prejudice will apply.

Teja contends that a requirement of prejudicial error taints the ethical purity of the legal system. Teja correctly points out that attorney side switching undermines the integrity of the legal system in the eyes of the public. Members of the community have a right to consult an attorney without later having that attorney appear on the other side of the same issue. We share this concern and believe it is adequately addressed by Washington State Bar Association procedures for investigation of ethical violations and disciplinary action, which were initiated by Teja in this case. Such proceedings sufficiently protect the public without needlessly consuming judicial resources. Because Teja has not provided this court with any record or evidence demonstrating his interests were prejudiced as the result of Pandher's

ethical violation, reversal is not warranted in this case. Consequently, the judgment of the trial court is affirmed.

SCHOLFIELD and FORREST, JJ., concur.

Reconsideration denied April 15, 1993.

Review denied at 122 Wn.2d 1008 (1993).