**Dougas K. DIETER, Plaintiff,**

v.

**The REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Defendants.**

**No. CIV–S–95686 DFL GGH.**

United States District Court, E.D. California.

April 21, 1997.

---

William Bernheim, Dixon, CA, for plaintiff Douglas Dieter.

Gerald P. Dodson, David L. Bilsker and Thomas C. Mavrakakis, Arnold, White & Durkee, Menlo Park, CA, Palmer Martin Simpson, Office of Technology Transfer, Alameda, CA, James E. Holst, University of California, Office of the General Counsel, Oakland, CA, Basil P. Fthenakis, Oliver P. Colvin, Palo Alto, CA, for defendants Regents of UC, James Hunt, Nicholas Sitar, Lloyd D. Stewart, Kent Udell.

## AMENDED MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Defendants Amit Nagpal and USPCI move to disqualify counsel for co-defendant, the Regents of the University of California ("UC Regents").

### I.

This case arises out of a patent dispute between plaintiff Dieter and numerous defendants, including the UC Regents, Nagpal, and USPCI. Dieter is a former graduate student at the University of California at Berkeley. While studying at Berkeley, Dieter was also employed at Solvent Service, which was owned by defendant Nagpal and later was acquired by USPCI. In the course of his work at Solvent Service, Dieter allegedly developed a method for removing toxic waste from soil through steam injection. With assistance from Nagpal and Solvent Service, Dieter obtained a patent for the process, Patent No. 5,009,266 ("266 patent"). Dieter assigned a share of the patent to Solvent Service. The UC Regents also obtained a patent for a steam-injection method for toxic clean-up, Patent No. 5,018,576 ("576 patent").

Dieter brought this action claiming that the UC Regents misappropriated his work by obtaining the 576 patent. He also sued Nagpal and USPCI for allegedly violating their licensing agreement. By previous orders the court has dismissed plaintiff's claims as to all defendants. What remains are the counterclaims and cross-claims filed by the

UC Regents against Dieter, Nagpal, and USPCI charging infringement of the UC Regents' 576 patent and making various other related claims.

The UC Regents are represented in this case by the firm of Arnold, White & Durkee ("Arnold") and by Gerald Dodson and David Bilsker of that firm. Dodson and Bilsker, as well as Mark Dickson of the Arnold firm, previously practiced at Townsend & Townsend ("Townsend") during the period from 1989 to 1992. Dodson was a partner at Townsend, while Bilsker and Dickson were associates. During the time that Dodson, Bilsker, and Dickson were at Townsend, the firm served as intellectual property counsel for Solvent Service and later USPCI.[1] As part of its representation of USPCI, Townsend prepared the 266 patent application. To prepare the application, Townsend was required to research inventorship and was given full access to Solvent Service's and USPCI's personnel, business, and scientific records.

Dodson, Bilsker, and Dickson practiced out of Townsend's San Francisco office, and they did not work on the Solvent Service or the USPCI accounts. Dodson Decl., ¶¶ 2, 5, 6; Bilsker Decl., ¶¶ 2, 8, 9; Dickson Decl., ¶¶ 2, 4, 5. The attorneys who filed the 266 patent application were Ken Alder and Jacqueline Larson of Townsend's Palo Alto office. Dodson, Bilsker, and Dickson have submitted declarations averring that they have no knowledge of Solvent Service, USPCI, or the 266 patent from their time at Townsend.

## II.

■ The Eastern District of California applies the Rules of Professional Conduct of the State Bar of California. *See* Local Rule 83–180(e). Where those rules do not provide an applicable standard, the Model Rules of Professional Conduct of the American Bar Association and the Restatement may be considered guidance. *E.g. Flatt v. Superior Court,* 9 Cal.4th 275, 282 n. 2, 36 Cal.Rptr.2d 537, 885 P.2d 950 (1994) (citing with approval both the Model Rules and the Restatement regarding attorney-client conflicts of interest); *see* B.E. Witkin, 1 *California Procedure* § 418 (4th ed.1996).[2]

■ Rule 3–310(E) of the Rules of Professional Conduct of the State Bar of California prohibits an attorney from accepting "employment adverse to [the attorney's] ... former client where, by reason of the representation of the ... former client, [the attorney] has obtained confidential information material to the employment." The California courts have applied a "substantial relationship" test to determine if a prior representation may conflict with a current representation adverse to the former client. Thus, if the current representation is substantially related to the subject matter of the former representation, and if the new case places the attorney in an adverse position to his former client, then Rule 3–310(E) requires disqualification of the attorney. *See Flatt,* 9 Cal.4th at 283, 36 Cal.Rptr.2d 537, 885 P.2d 950. The court must conclusively presume that the attorney learned confidential, material information during the course of the prior representation if the two matters are substantially related. *Henriksen v. Great American Savings and Loan,* 11 Cal.App.4th 109, 114, 14 Cal.Rptr.2d 184 (1992) (citations omitted).

Although difficult to apply in certain types of cases, the substantial relationship test is straightforward when the attorney was directly involved in the first representation and that representation is substantially related to the subject matter of the second representation, in which the attorney is also involved.

---

1. Dodson worked at Townsend from December 1988 to July 1992. Dodson Decl., ¶ 2. Bilsker worked at Townsend from October 1990 to March 1994. Bilsker Decl., ¶ 2. Dickson worked at Townsend from October 1990 to February 1992. Dickson Decl., ¶ 2.

2. Courts in California also look to the ABA's Model Code of Professional Responsibility, which preceded the Model Rules, for guidance. Local Rule 83–180(e); *Paul E. Iacono Structural Eng'r,*

*Inc. v. Humphrey,* 722 F.2d 435, 439–40 n. 5 (9th Cir.1983), *cert. denied,* 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983). The Model Code, however, does not explicitly address the situation in which an attorney's representation of a former client creates a conflict of interest with regard to the attorney's representation of a current client. *Model Rules of Professional Conduct* Rule 1.09 cmt. (1995).

In this circumstance it makes no difference whether or not the attorney has left the firm that handled the first representation. Moreover, if the attorney did join a new firm, because the attorney is barred from handling the second matter, the attorney's entire firm would be barred by imputation. *Flatt,* 9 Cal.4th at 283, 36 Cal.Rptr.2d 537, 885 P.2d 950 (citations omitted). But it is much less clear under the California rules and case law whether an attorney who was *not* personally involved in the prior representation would be barred from the subsequent representation if the attorney has left the firm that handled the prior representation and joined a new firm. The consequences of barring the attorney in this situation are substantial since the attorney's new firm would also be barred by imputation. Such imputation upon imputation—imputing to the attorney knowledge of confidences in the first representation and then imputing to the attorney's new firm knowledge of these imputed confidences—could have potentially large effects on the market for attorney services and the ability of attorneys to move from firm to firm.

The ABA's Model Rules of Professional Conduct address the precise situation of the peripatetic attorney and conclude that the attorney is not necessarily precluded from the second representation. Rule 1.9 prohibits a lawyer from representing a person:

> in the same or substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired [confidential] information ... that is material to the matter.

*Model Rules of Professional Conduct* Rule 1.9(b) (1995). As applied to an attorney moving between law firms who had been vicariously disqualified from representing Client–B while practicing at Firm–A because of that firm's representation of Client–A, the Model Rules use a functional analysis, focusing on "preserving confidentiality," in determining whether the attorney should remain vicari-

ously disqualified after leaving Firm–A for Firm–B.[3] Rule 1.9 cmt. "Preserving confidentiality is a question of [the attorney's] access to information." Rule 1.9 cmt. The Model Rules conclude:

> if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict. Rule 1.9 cmt.

The proposed Restatement of the Law Governing Lawyers is also on point:

> When a lawyer leaves a firm or other organization whose lawyers were subject to imputed prohibition owing to presence in the firm of another lawyer, the departed lawyer becomes free of imputation so long as that lawyer obtained no material confidential information relevant to the matter. Similarly, lawyers in the new affiliation are free of imputed prohibition if they can carry the burden of persuading the finder of fact that the arriving lawyer did not obtain confidential client information about a questioned representation by another lawyer in the former affiliation.

*Restatement (Third) of the Law Governing Lawyers* § 204 cmt. c(ii) (Proposed Final Draft No. 1, 1996).

 California law, although somewhat less certain as applied to the particular circumstances here, is generally consistent with the Model Rules and the Restatement. In determining whether an attorney should be disqualified under the substantial relationship test, California courts look to whether "confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation." *H.F. Ahmanson & Co. v. Salomon Brothers. Inc.,* 229 Cal.App.3d 1445, 1454, 280 Cal.Rptr. 614 (1991) (citing *Global Van. Lines Inc. v. Superior Court,* 144 Cal.App.3d 483, 489, 192 Cal. Rptr. 609 (1983)). Whether confidential, ma-

---

**3.** The second factor considered in the functional analysis is "avoiding positions adverse to a client," but this factor is only relevant when the lawyer actually was involved in the prior representation of Client–A. Rule 1.9 cmt.

terial information would normally have been imparted to the attorney depends on three factors: (1) the factual similarities between the current and former representations, (2) the similarities between the legal questions posed, and (3) the nature and extent of the attorney's involvement with the former representation. *Id.* at 1455, 280 Cal.Rptr. 614 (citing *Silver Chrysler Plymouth. Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 760 (2d Cir.1975) (Adams, J., conc.)). The third factor requires examination of " 'the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy.' " *Id.* (quoting *Silver Chrysler Plymouth,* 518 F.2d at 760). The third factor will not require disqualification of an attorney whose participation in the former representation was "peripheral." *See e.g. Trone v. Smith,* 621 F.2d 994, 998 n. 3 (9th Cir.1980) (citing *Gas–A–Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322, 1324–25 (9th Cir.1976), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976)); *see also* Kenneth L. Penegar, "The Loss of Innocence: A Brief History of Law Firm Disqualification in the Courts," 8 *Geo. J. Legal Ethics* 831 (1995) (discussing the shift from strict disqualification to the more pragmatic approach advanced in *Silver Chrysler Plymouth* ).

In this case, Dodson, Bilsker, and Dickson submitted declarations averring that they were not personally involved in the Solvent Service or USPCI representations at Townsend and that they have no knowledge about those entities or the 266 patent stemming from their time at Townsend. In addition, Townsend is a large firm, and Dodson, Bilsker, and Dickson worked out of the San Francisco office, as opposed to the Palo Alto office, which had the Solvent Service and USPCI accounts. Thus, there can be no assumption that Dodson, Bilsker, or Dickson had access to confidential client information concerning USPCI simply because of their membership in the same firm. USPCI has presented no evidence undermining Dodson's, Bilsker's, and Dickson's declarations. Based on the principles articulated in the Model Rules and the Restatement, Dodson, Bilsker, and Dickson should not be disqualified.

USPCI relies heavily on *Elan Transdermal Limited v. Cygnus Therapeutic Systems,* 809 F.Supp. 1383 (N.D.Cal.1992), in support of its position that California law requires mandatory disqualification of the three former Townsend attorneys and the Arnold firm. But *Elan* is distinguishable from this case. In *Elan,* the firm handling the first representation sought to handle a second representation adverse to its former client. The case is not applicable to the situation in which an attorney not involved in the first representation leaves the firm and joins a second firm that would handle a matter adverse to the client of the first firm.

### III.

Because Dodson, Bilsker, and Dickson had no involvement with the Solvent Service and USPCI accounts at Townsend, USPCI's motion to disqualify is DENIED.

IT IS SO ORDERED.