OXFORD SYSTEMS, INC., on behalf of itself and all others similarly situated, Plaintiff,

v.

CELLPRO, INC., et al., Defendants.

No. C98–298Z.

United States District Court, W.D. Washington, at Seattle.

April 22, 1999.

Jessica Ann Eaves, Cohen Milstein Hausfeld & Toll PLLC, Seattle, WA, for Oxford Systems, Inc. and Lillian Keen, plaintiffs.

George E. Greer, Heller, Ehrman, White & McAuliffe, Seattle WA, Bruce G. Vanyo, John Pearce, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for defendants.

Karen Marie Sutherland, and Robert G. Andre, Ogden Murphy Wallace, P.L.L.C., Seattle, WA, for Intervenor Becton Dickinson.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on intervenor Becton Dickinson's motion to disqualify Perkins Coie from representing Lyon & Lyon, L.L.P., in this litigation (docket no. 44). The Court, having considered the briefs in support and opposition to the motion, and having heard oral argument on March 30, 1999, hereby GRANTS Becton Dickinson's motion to disqualify Perkins Coie.

*Background*

Johns Hopkins University (JHU) owns certain patents which it has licensed to Becton Dickinson (Becton). Becton has in turn sublicensed these patents to Baxter Healthcare Corporation (Baxter).

In April 1992 CellPro filed a complaint in this district against Baxter and Becton seeking a declaratory judgment of noninfringement, invalidity, and unenforceability of the JHU patents. The complaint also alleged violations of the Sherman and Clayton Acts. CellPro was represented in the action by Lyon & Lyon, with Seed & Berry acting as local counsel. Becton Dickinson hired a Boston law firm to handle the antitrust claims, a New York firm to handle the patent issues, and Perkins Coie to serve as local counsel.

JHU was not named in the Washington lawsuit even though it was the owner of the patents. Baxter and Becton filed a motion to dismiss the complaint, arguing

that JHU was a necessary party and that JHU was not subject to personal jurisdiction in this district. In September 1993, District Judge Carolyn Dimmick found that JHU was a necessary party with respect to the patent claims and that the Court did not have jurisdiction over JHU. Accordingly, the Court dismissed the portion of the Complaint related to the patent claims, and stayed the antitrust claims.

In early 1994, Becton, Baxter, and JHU filed a complaint against CellPro in Federal District Court for the District of Delaware alleging that CellPro infringed one of the JHU patents. In response to the filing of the Delaware complaint, CellPro filed a second complaint in this district against JHU, Becton, and Baxter alleging further antitrust violations. CellPro then moved to consolidate the two Washington actions, and JHU, Becton, and Baxter moved to transfer the Washington cases to Delaware. In April 1994, Judge Dimmick granted CellPro's motion to consolidate the two Washington cases, and also granted the defendants' motion to transfer the consolidated cases to the Delaware court.

Perkins Coie was not counsel of record in the Delaware litigation. Perkins partner David Burman states in his declaration that the Office of the Clerk of the District Court of Delaware notified Perkins that it could not continue as counsel in the Delaware litigation unless it retained local counsel and applied for admission pro hac vice. It is undisputed that Becton never asked Perkins to make application to the Delaware court, and Perkins never sought to be admitted pro hac vice in Delaware. *See* Burman Decl. at ¶ 9(j) & Ex. 4 to Burman Decl. Nevertheless, Perkins did continue to assist Becton with aspects of the Delaware litigation, particularly "organiz[ing] and prepar[ing] documents for exhibits," preparing and serving subpoenas, and arranging depositions in Seattle. *See* Ex. 10. Notably, Perkins assisted Becton with preparing a subpoena for Coe Bloomberg, a partner with Lyon & Lyon, which Perkins now represents.

The Delaware patent infringement case was tried to a jury beginning on July 24, 1995. Although the jury found that the claims of all of the JHU patents were invalid as obvious in light of prior art, the district court granted the plaintiffs' posttrial motion for judgment as a matter of law as to some issues and for a new trial on other issues. A second jury trial commenced on March 4, 1997. On March 11, 1997, the jury returned with verdicts finding that plaintiffs had proven damage in the amount of $2.3 million and that CellPro's infringement of the patents had been wilful. Plaintiff then moved for enhancement of damages pursuant to 35 U.S.C. § 284, arguing that CellPro had no reasonable, good faith basis to believe the JHU patents were invalid. CellPro's defense to the bad faith allegation was that it relied on the advice of its counsel, Lyon & Lyon, that the JHU patents were invalid. The district court rejected this defense, stating:

> ... CellPro almost proved plaintiff's case for them, with its weak and disingenuous defense of alleged good-faith reliance on the advice of counsel.... The Lyon & Lyon opinions were so obviously deficient, one might expect a juror to conclude the only value they had to CellPro in the world outside the courtroom would have been to file them in a drawer until they could be used in a cynical effort to try to confuse or mislead what CellPro, its Board, and counsel must have expected would be an unsophisticated jury.

*Johns Hopkins University v. CellPro*, 978 F.Supp. 184, 193 (D.Del.1997), *aff'd*, 152 F.3d 1342 (Fed.Cir.1998). The Delaware court, having concluded that CellPro acted in bad faith, trebled the jury's damage award.

Following the district court's decision, JHU, Becton, and Baxter requested that the Court award attorneys' fees and costs of approximately $7.0 million against CellPro and Lyon & Lyon based on Rule 11 and 28 U.S.C. § 1927. The district court stated that it would address that motion in

a separate decision after the Court of Appeals had had an opportunity to review the case on appeal. On August 11, 1998, the Federal Circuit affirmed. On September 30, 1998, the district court entered judgment against CellPro for attorneys' fees and costs in the amount of $8.7 million. The district court's order expressly reserved decision "on whether to award additional fees and costs against CellPro's trial counsel, Lyon & Lyon, and whether Lyon & Lyon should be declared jointly and severally liable for some or all of the fees and costs hereby awarded against Cell-Pro." Hallenbeck Decl. at ¶ 20. Becton asserts that it intends to pursue a claim against Lyon & Lyon for fees. *Id.*

On March 10, 1998, while Becton's and JHU's patent litigation remained pending in Delaware, this securities fraud action was filed. Both CellPro and Lyon & Lyon are named as defendants. In the Complaint, the plaintiff shareholders allege, among other things, that

> Lyon & Lyon had access to the adverse non-public information about CellPro's wilful patent infringement. In furtherance of defendants' common scheme, Lyon & Lyon issued false and misleading opinions and defended CellPro in litigation based on those opinions.

Class Action Complaint at ¶ 68. The Complaint goes on to allege that Lyon & Lyon knew or recklessly disregarded that Cell-Pro continued to utilize the patent opinions, and that CellPro purported to base the legitimacy of its infringing activities on those opinions. *See* ¶¶ 69–75. Thus, Lyon & Lyon's opinions on the validity of the JHU patents and Lyon & Lyon's conduct in the Delaware litigation are central to the securities fraud allegations in this lawsuit.

Lyon & Lyon is represented in this lawsuit by Perkins Coie. Becton Dickinson, who is not a party to this lawsuit, has intervened in this action for the sole purpose of moving to disqualify Perkins Coie as counsel for Lyon & Lyon. Becton argues that Perkins' representation of Lyon & Lyon is a conflict of interest that requires Perkins' disqualification. Perkins argues there is no conflict of interest because Becton is a former client, not a current client; the Perkins partner who handled the patent suit as local counsel left Perkins in 1996; and no current Perkins attorneys who previously worked on the patent matter have any material confidential information about Becton that could be used in this securities litigation.

*Discussion*

When faced with an allegation that an attorney's representation presents a conflict of interest, it is "the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar." *Gas–A–Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322, 1324 (9th Cir.1976) (per curiam) (citing *Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382 (3rd Cir.1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973)), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). To determine whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the Court should first refer to the local rules regulating the conduct of members of its bar. *United States ex rel. Lord Elec. Co., Inc. v. Titan Pacific Const. Corp.,* 637 F.Supp. 1556, 1560 (W.D.Wash. 1986). Attorneys practicing in this district must abide by the Rules of Professional Conduct promulgated by the Washington Supreme Court. *See* Local Rule GR 2(e)(1).

The Washington Rules of Professional Conduct (RPC) have different conflict-of-interest rules for current clients than for former clients. With respect to current clients, the rules provide that a lawyer cannot represent any client with interests directly adverse to the interests of another client unless each client consents in writing after full disclosure. *See* Rule 1.7. With respect to former clients, the rules provide that a lawyer may not represent a client if he or she is utilizing confidences to the

disadvantage of the former client, or the former client's interests are adverse and the matter is substantially related. *See* RPC 1.9. A firm is not prohibited from representing a client under these circumstances, however, where the lawyer who previously represented the former client has terminated his or her association with the firm, and no lawyers remaining at the firm possess secrets or confidences of the former client. *See* RPC 1.10.

Becton asserts that in April 1998, when Perkins began representing Lyon & Lyon, Becton was a current client of Perkins, and therefore Perkins was prohibited from representing Lyon & Lyon in a substantially related matter absent Becton's written consent. Perkins concedes that this securities litigation and the former patent action are substantially related matters, but it argues that Becton was a former client, not a current client, in April 1998. Perkins further argues that the partner who represented Becton in the patent matter left the firm in 1996, and no lawyers remaining at Perkins had acquired any secrets or confidences. If Becton was a current client of Perkins Coie at the time Perkins agreed to represent Lyon & Lyon, and its representation of Lyon & Lyon is adverse to the interests of Becton, then Perkins *must* be disqualified because Becton has not consented in writing to Perkins' representation of Lyon & Lyon. *See* RPC 1.7.[1]

I. *Was Becton a Former or Current Client of Perkins Coie in April 1998?*

Whether an attorney-client relationship exists is a question of fact, the essence of which may be inferred from the parties' conduct. *Teja v. Saran,* 68 Wash. App. 793, 795, 846 P.2d 1375 (1993), *review*

denied, 122 Wash.2d 1008, 859 P.2d 604 (1993). "The existence of the relationship 'turns largely on the client's subjective belief that it exists.'" *Bohn v. Cody,* 119 Wash.2d 357, 363, 832 P.2d 71 (1992) (quoting *In re McGlothlen,* 99 Wash.2d 515, 522, 663 P.2d 1330 (1983)). The client's subjective belief, however, does not control the issue unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions. *Id.*

Perkins Coie has represented Becton on various matters for thirteen years, and since 1990, Becton has used Perkins Coie exclusively for its legal work in Washington State. *See* Hallenbeck Decl., docket no. 40, at ¶ 4. Robert M. Hallenbeck, Associate General Counsel of Becton, describes in his declaration the nature of the work performed by Perkins since 1985:

> Perkins Coie has represented Becton as counsel of record or in an advisory capacity in matters ranging from employment/breach of contract and defamation, products liability, corporate acquisitions and patent litigation. The nature of the legal work performed by Perkins Coie on behalf of Becton has included, generally, rendering advice on state appellate practice, preparation of briefs and oral argument before lower and appellate courts in Washington, review of documents for production, preparation of answers to interrogatories, taking and defending depositions of Becton's witnesses and other witnesses, negotiations and discussions with attorneys for other parties, review of corporate records as part of "due diligence," review of and comment on a merger agreement and tax issues related thereto, and rendering advice on the State Bulk Transfer Act.

---

1. Rule 1.7 provides in pertinent part:
   (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
   (1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

   (2) Each client consents in writing after consultation and a full disclosure of the material facts (following authorization from the other client to make such a disclosure).

*Id.* Becton last engaged Perkins in 1996 in the matter of *Nyland v. Becton Dickinson,* a product liability action. Becton retained Perkins as local counsel in that matter and Perkins performed services for Becton through May 1997, when the case was settled.

■ Becton contends that based on its thirteen year relationship with Perkins and its past practice of using Perkins exclusively for legal work in Washington, it reasonably believed in April 1998, when Lyon & Lyon sought to engage Perkins, that Perkins and Becton had an existing attorney-client relationship. Perkins argues that there is no retainer agreement or other agreement with Becton that establishes an ongoing attorney-client relationship, and in the absence of such an agreement an existing attorney-client relationship should not be presumed. Perkins argues that such presumptions create indefinite attorney-client relationships based on past legal work, rather than present responsibilities, and unduly hamper the law firm's ability to take on new clients. These are valid concerns, but not in the context of this case.

Washington law is clear that the existence of an attorney-client relationship turns largely on the client's subjective understanding of whether such a relationship exists, provided that subjective belief is reasonable under all the circumstances. Thus each case turns on its facts, and in this case, the facts demonstrate that Becton reasonably believed in April 1998 that it had an ongoing relationship with Perkins. That belief was based on the duration of the attorney-client relationship, Becton's practice of using Perkins exclusively as its local counsel in Washington matters whenever such matters arose, and the fact that Perkins had been actively participating in the *Nyland* matter within the last year. The relationship between Becton and Perkins was of sufficient scope and duration that Becton reasonably assumed that Perkins would continue to represent Becton in further matters that

arose in Washington State. Moreover, while Perkins was not counsel of record in the Delaware patent action, the firm had been retained to handle the patent matter, had performed substantial work on that matter, and had continued to perform legal work on the case after it had been transferred to Delaware. At the time Lyon & Lyon approached Perkins in April 1998, the patent action was still ongoing in Delaware and the question of whether fees should be awarded against CellPro and Lyon & Lyon had not been resolved. Thus, while Perkins was not actively working on the Delaware case in April 1998, it was reasonable for Becton to believe that based on Perkins' previous engagement and involvement in the patent matter, Perkins would not agree to represent another client with interests directly adverse to those of Becton in a substantially related matter.

In addition, the Court notes that when this securities class action was filed, Becton's Associate General Counsel, Robert Hallenbeck, called Perkins to obtain a copy of the complaint. This is further evidence of Becton's subjective understanding that it was Perkins' client at that time. That Perkins obtained a copy of the complaint without charge does not undermine Becton's understanding that it had an attorney-client relationship with Perkins.

The Court concludes that Becton and Perkins had an ongoing attorney-client relationship in April 1998, and therefore pursuant to RPC 1.7 Perkins was prohibited from representing Lyon & Lyon absent Becton's written consent. Because Becton timely objected to Perkins' representation of Lyon & Lyon, the Court concludes that Perkins must be disqualified as counsel for Lyon & Lyon in this matter.

The Court further concludes that even if Becton was a former client of Perkins in April 1998, Perkins would still have to be disqualified under RPC 1.9.

II. *Even if Becton Was a Former Client, Perkins Should Be Disqualified*

■ RPC 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or

(b) Use confidences or secrets relating to the representation to the disadvantage of the former client. . . .

RPC 1.9 is stated in the alternative: "an attorney may not proceed if (1) he or she is utilizing confidences to the disadvantage of the former client, *or* (2) the former client's interests are adverse *and* the matter is substantially related." *Teja*, 68 Wash.App. at 798, 846 P.2d 1375. Thus, proof of disclosure of confidential information is not necessary if the matters are substantially related. *Teja*, 68 Wash.App. at 799, 846 P.2d 1375.

■ The Ninth Circuit applies a similar test: an attorney will be disqualified from representing a client where that representation is adverse to a former client, and the present representation bears a substantial relationship to the attorney's former representation. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980). Substantiality is present if the factual contexts of the two representations are similar or related. *Id.* The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. *Id.* at 999. As a result, the inquiry is limited to whether there is a substantial relationship between the two representations. "It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Id.* at 999.

The Court finds, and Perkins concedes, that the two matters are substantially related despite the difference in claims. Although the first case involved patent infringement and this case alleges securities fraud, CellPro's reliance on Lyon & Lyon's patent opinions is a central issue in both cases. It is also clear that the interests of Becton and Lyon & Lyon are adverse. The Delaware court has ruled that it will consider either awarding attorneys' fees against Lyon & Lyon or holding Lyon & Lyon jointly and severally liable for fees and costs awarded against CellPro. Thus, Becton has a claim against Lyon & Lyon for fees and costs in the patent litigation based on Lyon & Lyon's misconduct surrounding the issuance of the patent opinion to CellPro. Perkins, as the lawyer for Becton in the patent action, necessarily would have had to take the position that Lyon & Lyon's patent opinion was a sham and that CellPro could not have in good faith relied on that opinion.[2] In the current securities action, Perkins, as counsel for Lyon & Lyon, must necessarily take the position that Lyon & Lyon's opinion was valid and based on a good faith review of the JHU patent. The two matters are substantially related, and Lyon & Lyon's interests in this suit are materially adverse to Becton's interests in the patent litigation.

■ Perkins acknowledges that the two matters are substantially related and in the usual circumstance RPC 1.9 would prohibit Perkins from representing Lyon & Lyon. Perkins argues, however, that because the partner who handled the Becton patent matter, David Wagoner, left the

---

2. Although Judge Dimmick had dismissed the patent infringement claims in September 1993 for failure to join JHU as an indispensable party (*see* C92–715D, docket no. 133), CellPro's antitrust claims were based in part on an alleged conspiracy by JHU, Baxter, and BD to enforce patents known to be invalid. Thus, the validity of the JHU patents was an issue in the antitrust, as well as the patent, portion of the case. *See* C94–427D, docket no. 1.

firm in 1996, disqualification is not required. In so arguing, Perkins relies on RPC 1.10, which provides:

> (c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
>
>> (1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; *and*
>>
>> (2) Any lawyer remaining in the firm has acquired confidences and secrets ... that are material to the matter.

Unlike RPC 1.9, RPC 1.10 does not require disqualification merely because the matters are substantially related. Under RPC 1.10, the firm's disqualification will not be required unless the matters are substantially related *and* remaining lawyers have acquired confidences and secrets. Perkins argues that no lawyers remaining at the firm have acquired any material confidences or secrets of Becton.

There is a presumption that attorneys who work together share secrets and confidences. *Lord Elec.,* 637 F.Supp. at 1564. This presumption is the basis for RPC 1.10's imputed disqualification provision, which provides that "while lawyers are associated with a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so." The presumption that lawyers within a firm share confidences is rebuttable, however. *Id., Amgen, Inc. v. Elanex Pharmaceuticals, Inc.,* 160 F.R.D. 134, 140 (W.D.Wash.1994).

Perkins submits declarations from two attorneys who assisted David Wagoner in the patent litigation, Joseph Bringman and Elizabeth (Betsy) Alaniz. Each states: "I do not now possess, and never have acquired, any secrets or confidences of Becton Dickinson of any type, much less any that would be material to the securities litigation." *See* Alaniz Decl. at ¶ 4; Bringman Decl. at ¶ 4. Perkins argues these declarations are sufficient to rebut the presumption that Mr. Wagoner shared Becton's secrets and confidences with other lawyers at the firm.

Perkins attorney Joseph Bringman billed one half hour of work on the Becton patent matter in June 1992. *See* Bringman Decl. at ¶ 3 ans Ex. 1 to Bringman Decl. Betsy Alaniz billed 10.25 hours in April 1994, and 2.4 hours in February and March 1995, on the Becton matter. *See* Exhibits to Alaniz Decl. Perkins argues that Bringman and Alaniz's time on the Becton matter was too minimal to require disqualification under RPC 1.9. Perkins further argues that the limited amount of work performed by these two lawyers demonstrates that they were not exposed to any secrets or confidences of Becton while the patent matter was pending. Finally, Perkins argues that Alaniz performed only ministerial tasks and, therefore, she did not in fact represent Becton on any matters related to the current litigation. Becton counters that the fact that Alaniz and Bringman billed only for a short period of time does not preclude disqualification. *See Elan Transdermal Ltd. v. Cygnus Therapeutic Systems,* 809 F.Supp. 1383, 1388 (N.D.Cal.1992) (the fact that attorneys billed only a short period of time—total of 3.25 hours—did not preclude their work from being substantially related to the present litigation).

Becton is correct that the amount of time billed on the matter is not dispositive of the disqualification issue. Nevertheless, the extent of a lawyer's involvement in the previous case is a factor to consider in determining both whether that lawyer should be disqualified under RPC 1.9, and whether that lawyer, or any other lawyers remaining at the firm, have acquired secrets or confidences of the former client for purposes of RPC 1.10(c)(2). *See Hunsaker,* 74 Wash.App. at 46, 873 P.2d 540 ("The scope of a 'matter' for purposes of this Rule [1.9] may depend on the facts of a particular situation or transaction. The

lawyer's involvement can also be a question of degree.") (quoting Model Rules of Professional Conduct Rule 1.9, comment at 38 (1989)); *Pacific Employers Ins. Co. v. P.B. Hoidale Co., Inc.*, 789 F.Supp. 1112, 1117 (D.Kan.1992) (the time factor, standing alone, is not dispositive but is a material fact bearing on whether confidential information was likely imparted). *See also Dieter v. Regents of Univ. of California*, 963 F.Supp. 908, 911–912 (E.D.Cal.1997) (whether confidential information would normally have been imparted to the attorney depends upon the factual similarities between the current and former representations, the similarities between the legal questions posed, and the "nature and extent of the attorney's involvement with the former representation"); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 757 (2d Cir.1975) (disqualification would be inappropriate if an attorney's association with a related matter was so peripheral that there was "no realistic chance that confidences were disclosed" to him or her).

According to Bringman's time sheet, his work on the Becton patent matter was limited to reviewing the proposed protective order and having a conference with David Wagoner regarding that protective order. *See* Attachment to Bringman Decl., doc. 61. Although Bringman's work was arguably peripheral in light of the limited task he performed and the minimal amount of time billed on the matter, Alaniz's work was more substantial. In her declaration, Alaniz describes her work in the Becton matter as follows:

> [T]he tasks involved coordinating filings related to a motion to transfer the case to Delaware in April 1994, and assisting in 1995 with the issuance of deposition subpoenas for depositions in the Delaware action to be taken locally. To the best of my knowledge, I believe that my involvement did not extend beyond the rather ministerial involvement described in the time entries, and that I did not thereby, or otherwise, acquire any secrets or confidences of Becton Dickinson.

Alaniz Decl. at ¶ 3. Although the tasks performed in 1995 appear to be ministerial in nature (i.e., assisting with deposition arrangements and subpoenas), billing records show that Alaniz played a more substantive role in 1994. Alaniz had numerous telephone conferences with Thomas Burt, counsel for co-defendant Baxter International, and Donald Ware, Becton's antitrust counsel in Boston, and she participated in telephone conferences with opposing counsel. *See* Attachment to Alaniz Decl. She also billed time for a conference with partner David Wagoner on April 15, 1994. *Id.*

Becton also submits a letter dated April 1, 1994 from David Wagoner to Donald Ware, Becton's Boston counsel, which states:

> As I indicated I am leaving on Sunday to handle an ICC arbitration in Geneva, returning to Seattle probably Friday the 15th of April. In my absence, please refer any matters in the CellPro case to Betsy Alaniz. I have brought he up to date on the status of pending matters.

*See* Ex. 12 to Becton's Exhibits. At the time this letter was written and during the period of Mr. Wagoner's absence, several matters were pending in the Washington patent and antitrust cases. On March 31, 1994, defendants Baxter and Becton moved to transfer the infringement action to Delaware, and to stay all discovery pending transfer. *See* docket nos. 149, 152 in C92–715D. On April 4, 1994, Becton filed its answer to the CellPro patent infringement allegations. *See* docket no. 155 in C92–715D. On April 11, 1994, Becton filed its opposition to CellPro's motion to consolidate the two Washington cases, and several days later, on April 14, 1994, Becton filed its reply brief in support of its motion to transfer the action or stay proceedings. *See* docket no. 163 in C92–715D. In the related antitrust action against JHU, Becton, and Baxter, Becton filed a motion to dismiss or transfer on April 14,

1994. *See* docket no. 11 in C94–427D. Alaniz's time sheets for this period indicate that she had telephone conferences with counsel for Baxter "regarding motion to dismiss, opposition briefing and reply briefing." *See* Ex. 1 to Alaniz Decl., docket no. 62. She also "coordinate[d] the response to CellPro's opposition" and "coordinate[d] filing of opposition briefing." *Id.* Alaniz billed 3.25 hours on April 14, 1994 for a telephone conference with co-counsel for Becton, and a telephone conference with counsel for Baxter. On the next day she "review[ed] the pleadings" and had a telephone conference with co-counsel for Becton, as well as a conference with David Wagoner. *Id.*

Perkins argues that the motions to consolidate Washington cases, transfer Washington cases to Delaware, and stay discovery pending transfer involved only procedural matters and, therefore, Alaniz did no substantive work that would have exposed her to Becton confidences and secrets. Under these circumstances, Perkins argues, disqualification would be inappropriate. The Court rejects as without merit Perkins' distinction between "procedural" work and "substantive" work for purposes of determining whether Ms. Alaniz represented Becton in the patent matter. Although the nature of the work done by the lawyer is a factor to consider in determining whether confidences were likely disclosed, there is no basis for concluding that work on "procedural" matters constitutes some lower level of representation than work on "substantive" matters.

The work done by Alaniz on the Becton patent matter was not minimal or peripheral, and the patent matter she worked on was substantially related to this litigation. Alaniz participated in lengthy conference calls with co-counsel and opposing counsel about staying discovery and transferring the case to Delaware, where Becton had

filed suit against CellPro. She reviewed the pleadings, had conferences with Wagoner, and was designated by Wagoner as a contact person for Becton's other lawyers while Wagoner was out of the country. In the April 1, 1994 letter, Wagoner represented to Becton's other lawyers that Alaniz had been briefed on all pending matters. Although Alaniz did not spend a large amount of time on the case, it is evident that she was Wagoner's lead associate on the matter and he prepared her to take charge in his absence. This is not peripheral or minimal representation, despite Perkins' characterizations to the contrary.

Alaniz's involvement in the Becton matter was substantial enough that confidential information would normally have been imparted to her. Whether such disclosures were in fact made is not the proper inquiry. "It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Trone,* 621 F.2d at 999. *See also Teja,* 68 Wash.App. at 799, 846 P.2d 1375 (actual proof of disclosure of confidential information is not necessary if the matters are substantially related); *Kurbitz v. Kurbitz,* 77 Wash.2d 943, 947, 468 P.2d 673 (1970) (an appearance of conflicting interests is sufficient). Because Alaniz previously represented Becton in the patent matter, she is prohibited under RPC 1.9 from representing Lyon & Lyon in a substantially related matter. Alaniz's disqualification is in turn imputed to the entire firm under RPC 1.10(a).

Even if the Court was to conclude that Alaniz's role in the patent litigation was "minimal," as alleged by Perkins, the Court would still find that Perkins must be disqualified because it has not met its burden under RPC 1.10(c)(2) of proving that no lawyers remaining at Perkins have acquired confidences and secrets of Becton.[3]

---

3. Perkins suggested at oral argument that the inquiry under RPC 1.10(c)(2) is limited to whether any remaining lawyers *who per-* *formed work for the former client* has acquired secrets or confidences. RPC 1.10(c)(2) provides, however, that representation is per-

Although Perkins focuses on the work of only two of its lawyers, the invoices sent to Becton (*see* Becton Exhibits, Ex. 10) show that Perkins billed Becton for a substantial amount of work on the patent matter. Becton was billed approximately $27,000 for professional legal services in connection with the patent case, *see* invoices at Ex. 3 to Burman Decl., and, according to Becton, more than 45 hours of legal services were attributable to Perkins personnel other than Wagoner, Bringman, or Alaniz. *See* Reply Memo at n. 10. Perkins does not dispute that Becton was billed for 45 hours of legal services performed by other Perkins personnel. There is no evidence in the record indicating who these individuals are and whether any of them were exposed to confidences or secrets of Becton. Moreover, the invoices sent to Becton by Perkins show that Lyon & Lyon's conduct was an issue in the patent case at the time Perkins was representing Becton, and that Perkins employees were aware of Becton's concerns about Lyon & Lyon's conduct. The June 30, 1995 invoice to Becton charges Becton for preparing a "copy of subpoena and revised deposition notice" to send to Becton counsel Donald Ware. The invoice makes clear that the subpoena and deposition notice were intended for Coe Bloomberg of Lyon & Lyon, and for Lyon & Lyon itself. There were several telephone conferences during this period between Becton counsel Donald Ware and unidentified Perkins legal staff regarding the subpoenas for Coe Bloomberg and Lyon & Lyon, and the deposition notices served on Coe Bloomberg and Lyon & Lyon specifically request documents relating to Lyon & Lyon's patent opinions on the validity of the JHU patents. *See* Exh. 4 to Becton Exhibits.

That there were several other unidentified Perkins employees, whether attorneys or paralegals, who knew of Becton's concerns about Lyon & Lyon's patent opinions demonstrates how difficult it is to determine whether confidential information was in fact disclosed to persons at the firm. Because so many Perkins employees worked on the Becton matter, the declarations of two Perkins lawyers who billed only a fraction of the total time billed on the Becton matter are inadequate to rebut the presumption that confidences were shared. "There are just too many loose ends to rebut the presumption that current [Perkins] attorneys have confidential information material to the current dispute." *See Elan Transdermal Limited v. Cygnus Therapeutic Systems,* 809 F.Supp. 1383, 1392 (N.D.Cal.1992).

The Court also notes that although Perkins minimizes its role as local counsel for Becton in the patent matter, billing records and invoices clearly demonstrate that David Wagoner played a substantial role in the patent case and acquired confidential information about Becton during the course of his representation. Wagoner worked on discovery requests, reviewed the patents at issue, prepared pleadings, worked on an opposition to CellPro's motion for Becton to produce redacted documents, had telephone conferences regarding the production of redacted Becton documents, attended depositions, and otherwise participated in discovery. *See generally* invoices from 1992 and 1993, Ex. 10 to Becton exhibits. Perkins conceded at oral argument that Wagoner's work on the patent matter was so extensive that if Wagoner was still with the firm, Perkins could not represent Lyon & Lyon in this case.[4] Under both Washington and Ninth

---

mitted unless *"any* lawyer remaining in the firm has acquired secrets or confidences." RPC 1.10(c)(2) (emphasis added).

4. Perkins also acknowledged that it would be reluctant to represent Lyon & Lyon in the Delaware patent matter given the firm's prior representation of Becton in the same matter. The Court sees little practical difference be-

tween representing Lyon & Lyon in the patent matter and representing Lyon & Lyon in this securities action. The principle underlying all conflict of interest rules is a duty of loyalty and confidentiality to the client. Perkins was retained by Becton in a case in which Becton argued that Lyon & Lyon issued a sham opinion on the validity of the JHU patents. Per-

Circuit law, there is a presumption that Wagoner shared these secrets and confidences with other lawyers at the firm, and the declarations of Alaniz and Bringman are simply insufficient to rebut that presumption.

Although the Court concludes that Perkins should be disqualified from representing Lyon & Lyon, the Court also finds that Perkins did not act in bad faith or wilfully ignore its obligations under the Washington Rules of Professional Conduct. Perkins promptly performed a conflicts check after it had been approached by Lyon & Lyon, but did not run Becton's name in the conflicts check because Becton is not a party in this case. Although Perkins ultimately discovered the connection between CellPro, Lyon & Lyon, and Becton, it determined that no conflict of interest existed because David Wagoner had left the firm. Perkins' initial conflicts check was reasonable under the circumstances, and its position on disqualification was based on a good faith interpretation of the ethical rules. Both Becton and Perkins examined the relevant issues in good faith and attempted to resolve the dispute without success. *See generally* Becton's Exhs. 5 through 9, docket no. 39. This motion to disqualify was brought by Becton only after all reasonable efforts to settle the dispute failed. The parties each consulted with experts on the Rules of Professional Conduct, and have presented the Court with detailed declarations of prominent expert witnesses who offer conflicting opinions on whether disqualification is warranted in this case. *See* Declarations of Robert H. Aronson (docket no. 55), David Boerner (docket no. 56), and John A. Strait (docket no. 68).

■ In determining whether to exercise discretion to disqualify counsel, the court has several obligations. First, it must balance the right of the former client to preserve confidences against a party's right to employ counsel of its own choosing. *Lord Elec.*, 637 F.Supp. at 1562. Second, the court must be mindful that "the interests of the clients are primary, and the interests of the lawyers are secondary." *Haagen–Dazs Company, Inc. v. Perche No! Gelato, Inc.*, 639 F.Supp. 282, 286 (N.D.Cal. 1986). Finally, the Court should resolve any doubts in favor of disqualification. *Chugach Elec. Assn. v. United States District Court*, 370 F.2d 441, 444 (9th Cir. 1966), *cert. denied*, 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967); *Kurbitz*, 77 Wash.2d at 946, 468 P.2d 673 (the attorney's right to practice law gives way in cases where there is question, in order to protect the public interest); *Harris By and Through Ramseyer v. Blodgett*, 853 F.Supp. 1239, 1273 (W.D.Wash.1994), *aff'd*, 64 F.3d 1432 (9th Cir.1995); *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 189–190 (7th Cir.1979). Here, the parties present a bona fide dispute on the conflicts issue, but the Court concludes that the evidence clearly weighs in favor of disqualification. Although disqualification has the immediate adverse effect of depriving Lyon & Lyon of the attorney of its choice, removal is necessary to protect Becton's confidences and to preserve the integrity of the adversary process.

Perkins argues that its client Lyon & Lyon will be severely prejudiced if it is disqualified. However, by letter dated May 20, 1998, Becton promptly gave notice to Perkins of the conflict issue and advised Perkins of its "strong objection" to representation of Lyon & Lyon. *See* Exh. 5 of Becton's Exhibits, docket no. 39. Perkins cannot be heard to complain about the time it has spent on this case since it has known almost from the very beginning that Becton objected to Perkins' representation of Lyon & Lyon. Moreover, very

kins is now defending Lyon & Lyon in a related action challenging the very same patent opinions. That Becton is not a party to the securities action does not alter the fact that Perkins is representing a client with interests directly adverse to Becton in a substantially related matter.

little has transpired in this case other than the appointment of lead plaintiffs and co-lead counsel, and the filing of briefs on the motion to disqualify.

*Conclusion*

The Court GRANTS intervenor Becton Dickinson's motion to disqualify Perkins from representing Lyon & Lyon in this action.

IT IS SO ORDERED.